IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

---

UNITED STATES OF AMERICA,                 Case No. 2:20-CR-52-DCN

        Plaintiff,

   vs.                                    Coeur d'Alene, Idaho
                            January 25, 2022
  TRINA MARIE WELCH,                        3:09 p.m.

        Defendant.

---

TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS

BEFORE THE HONORABLE DAVID C. NYE
CHIEF UNITED STATES DISTRICT COURT JUDGE

---

APPEARANCES:

For the Plaintiff:        MS. TRACI JO WHELAN
                          United States Attorney's Office
                          6450 North Mineral Drive, Suite 210
                          Coeur d'Alene, Idaho  83815

For the Defendant:        MS. AMY RUBIN
                          Federal Defender's Office
                          10 North Post Street, Suite 700
                          Spokane, Washington  99201


Court Reporter:           MS. ANNE BOWLINE, RMR, CRR
                          Anne_Bowline@id.uscourts.gov


*Proceedings recorded by stenography.  Transcript produced by computer-aided transcription.*

2

1          (Proceedings commenced at 3:09 p.m., January 25, 2022.)

2              THE COURT:  Counsel, are we ready to proceed?

3              MS. WHELAN:  Yes, Your Honor.

4              MS. RUBIN:  Yes, Your Honor.

5              THE COURT:  All right.  Patti, if you will call the

6      case, then.

7              THE COURTROOM DEPUTY:  The Court will now hear the

8      change of plea hearing in Case Number 2:20-CR-52, United

9      States versus Trina Welch.

10             THE COURT:  To begin with, let me just say that we're

11     doing this hearing, obviously, by way of video.  I apologize

12     for not being in Coeur d'Alene to do this in person.  That was

13     certainly my intent.  However, the fog in Pocatello yesterday

14     made it so planes could not land or take off, so I am sitting

15     in Pocatello, and we're doing this by Zoom.

16             I do need to remind everyone it is a federal crime to

17     record these proceedings without the Court's knowledge and

18     consent.

19             We'll begin with identification of who's on the

20     screen.  I can see my court reporter; my court clerk; U.S.

21     Attorney Traci Whelan is here; Amy Rubin is here with her

22     client, Trina Marie Welch.

23             First, I want to make sure that everybody's good with

24     going toward today.  Ms. Welch, are you okay doing this by way

25     of a Zoom hearing?

1              THE DEFENDANT:  Yes, I am.

2              THE COURT:  Ms. Whelan, are you okay doing it by

3    Zoom?

4              MS. WHELAN:  Yes, Your Honor.

5              THE COURT:  All right.  Ms. Welch, I have been

6    advised that you desire to appear in Court today in the

7    absence of a jury for the purpose of withdrawing your previous

8    plea of not guilty and to enter a plea of guilty to the crime

9    of wire fraud in violation of 18 U.S.C. Section 1343 as

10   charged in Count 6 of the indictment.  Is that correct?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Before I accept your guilty plea, I'm

13   going to have you placed under oath and then ask you a series

14   of questions to make sure that your plea is valid.  If you

15   will please raise your right hand.

16      (The defendant was sworn.)

17             THE COURT:  Having been sworn as a witness under

18   oath, do you understand that if you do not answer my questions

19   truthfully, you could be prosecuted for perjury?

20             THE DEFENDANT:  I understand that.

21             THE COURT:  If you do not understand a question that

22   I ask, please ask me to repeat it or rephrase it or visit with

23   your attorney before you attempt to answer it.  Okay?

24             THE DEFENDANT:  Yes.

25             THE COURT:  I'm going to ask you a series of personal

4

1    questions to make sure you're competent to enter a plea today.

2           What is your full name?

3           THE DEFENDANT:  Trina Marie Welch.

4           THE COURT:  Where were you born?

5           THE DEFENDANT:  In Miles City, Montana.

6           THE COURT:  How old are you?

7           THE DEFENDANT:  I am 49.

8           THE COURT:  How far did you go in school?

9           THE DEFENDANT:  A little -- a little of college.

10          THE COURT:  Okay.  So you have a high school diploma?

11          THE DEFENDANT:  Yes, I do.

12          THE COURT:  Can you read, write, and understand the

13   English language without difficulty?

14          THE DEFENDANT:  Yes, I can.

15          THE COURT:  Have you taken any drugs, medicine, or

16   pills, or consumed any alcoholic beverages in the past 48

17   hours?

18          THE DEFENDANT:  No, I have not.

19          THE COURT:  Can you tell me why we're here today?

20          THE DEFENDANT:  For a change of plea.

21          THE COURT:  All right.  Ms. Rubin, do you have any

22   doubt as to your client's competency?

23          MS. RUBIN:  I do not, Your Honor.

24          THE COURT:  I find the defendant competent to enter a

25   plea today.

1          Ms. Welch, have you had adequate time to discuss your

2    case with your attorney?

3          THE DEFENDANT:  Yes, I have.

4          THE COURT:  Are you satisfied with your attorney's

5    representation of you?

6          THE DEFENDANT:  I'm very satisfied with my attorney.

7          THE COURT:  Okay.  Do you understand that under

8    federal statutory law, the range of punishment for this crime

9    is up to 20 years in prison and a fine of up to $250,000?

10         THE DEFENDANT:  Yes, I understand that.

11         THE COURT:  Do you also understand that this Court is

12   obligated to calculate the applicable sentencing guideline

13   range and then to consider that range, any possible departures

14   under the sentencing guidelines, and other sentencing factors

15   under 18 U.S.C. Section 3553(a) in order to arrive at what I

16   deem to be a reasonable sentence?

17         THE DEFENDANT:  Yes, I do.

18         THE COURT:  Have you discussed the sentencing

19   guidelines with your attorney?

20         THE DEFENDANT:  Yes, we have.

21         THE COURT:  Under those guidelines, the Court will

22   establish an offense level based upon the seriousness of the

23   offense and a criminal history category based upon your prior

24   criminal record.  The offense level and the criminal history

25   category will then be used to determine an advisory guideline

1    range.  That range will be considered, along with a number of

2    other factors, in determining a reasonable sentence.  Do you

3    understand this?

4         THE DEFENDANT:  Yes, I do.

5         THE COURT:  Now, in determining the offense level, I

6    will take into account all facts related to your criminal

7    conduct, including matters not charged by the Government in

8    the crime to which you're pleading guilty.  Is that

9    understood?

10   (Discussion between the defendant and counsel.)

11        THE DEFENDANT:  Yes.

12        THE COURT:  All right.  In determining your criminal

13   history category, I will consider your prior criminal record

14   and your prior involvement, if any, with the criminal justice

15   system.  Do you understand this?

16        THE DEFENDANT:  Yes.

17        THE COURT:  Once the guideline range has been

18   established, the guidelines provide that if the case is

19   extraordinary in particular ways, the judge may depart from

20   the guideline range and impose a sentence that's above or

21   below the guideline range.  Do you understand this?

22        THE DEFENDANT:  Yes.

23        THE COURT:  For example, the guidelines specifically

24   authorize the Court to depart downwards and to give a sentence

25   below the guideline range if a defendant provides substantial

1   assistance to the Government in their investigation of this or

2   any other crime.  Do you understand?

3          THE DEFENDANT:  I do understand that.

4          THE COURT:  In addition, you need to know the

5   sentencing guidelines are only advisory.  I'm required to

6   consider them, along with a number of other statutory factors,

7   in arriving at a reasonable sentence, but I'm not bound by the

8   guidelines.  Nevertheless, most sentences will still fall

9   within the guideline range.  Do you understand that?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  Now, in the federal courts there is no

12  parole.  This means that if imprisonment is ordered in your

13  case, you will serve the entire sentence ordered by the Court.

14  You understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  I'm going to take a few minutes now to

17  explain to you the rights afforded to all criminal defendants.

18  Please listen carefully, and if you have any questions about

19  your rights, say so and we'll take whatever time is necessary

20  to ensure that you fully understand.

21          You have the right to maintain your plea of not

22  guilty and to proceed to trial by jury on the charges

23  contained in the indictment.

24          At the trial you would be presumed innocent.  The

25  Government would be required to prove you guilty by competent

1    evidence and beyond a reasonable doubt before you could be

2    found guilty.  You would not have to prove that you are

3    innocent.

4           You would have the right to be represented by counsel

5    at trial, and if you could not afford to retain counsel, an

6    attorney would be appointed to represent you.  If you wish to

7    call witnesses, the cost and process in bringing those

8    witnesses would be paid for you.

9           At the trial the Government would have to present

10   witnesses who must testify in your presence and be subject to

11   cross-examination by your attorney.  Your attorney could also

12   object to evidence offered by the Government and could offer

13   evidence on your behalf.

14          At the trial you would have the right to testify if

15   you chose to do so, but you would also have the right not to

16   testify.  And if you chose not to testify, the jury would be

17   instructed that they must not draw any inference of guilt from

18   the fact that you did not testify.  The right not to testify

19   is part of the privilege against self-incrimination.  That

20   privilege is waived when you plead guilty because as part of

21   your guilty plea, you're required to acknowledge your guilt.

22          If you were convicted after a trial, you would have

23   the right to an appeal, and an attorney would be appointed to

24   represent you on appeal.

25          Do you understand these rights?

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  Do you have any questions about them?

3          THE DEFENDANT:  No, I do not.

4          THE COURT:  If you plead guilty, you will waive your

5     right to a trial and the other rights I have just discussed.

6     There will be no trial, and I will sentence you on the basis

7     of your guilty plea.  Is that understood?

8          THE DEFENDANT:  Yes, I do.

9          THE COURT:  Having heard my explanation of your

10    rights, do you still want to plead guilty and waive those

11    rights?

12          THE DEFENDANT:  I do.

13          THE COURT:  Have you received a copy of the

14    indictment?

15          THE DEFENDANT:  I did.

16          THE COURT:  Have you read it?

17          THE DEFENDANT:  Yes, I have.

18          THE COURT:  Have you gone over the charges against

19    you with your attorney?

20          THE DEFENDANT:  I have.

21          THE COURT:  Do you understand those charges?

22          THE DEFENDANT:  Yes, I do understand them.

23          THE COURT:  As I said earlier, the maximum possible

24    penalty under Count 6 of the indictment is 20 years'

25    imprisonment followed by a term of supervised release of no

1    more than three years and/or a fine of up to $250,000 plus a

2    special assessment of $100.

3            Do you understand that this federal sentence may run

4    consecutive to any sentence which has been or may be imposed

5    in any state court?

6        (Discussion between the defendant and counsel.)

7            THE DEFENDANT:  Yes, I do understand it.

8            THE COURT:  Do you understand that the Court may

9    order you to pay restitution to any victim in this case?

10           THE DEFENDANT:  Yes, I do understand that.

11           THE COURT:  Do you also understand the Court may

12   require you to forfeit certain property to the government?

13           THE DEFENDANT:  Yes, I do.

14           THE COURT:  Do you understand that you're pleading

15   guilty to a felony offense?

16           THE DEFENDANT:  I do understand that.

17           THE COURT:  As such, you will be deprived of certain

18   rights, including the right to vote, the right to hold public

19   office, the right to serve on a jury, and the right to possess

20   any kind of firearm.  You understand that?

21           THE DEFENDANT: Yes, I do.

22           THE COURT:  After you complete serving whatever

23   sentence of incarceration is imposed, you'll then be placed on

24   supervised release for a term of up to three years.  During

25   that period of supervised release, you will be required to

1    comply with conditions imposed by the Court and the probation

2    office.  Your failure to comply will result in your being

3    sentenced to a further term of incarceration.  Do you

4    understand this?

5              THE DEFENDANT:  Yes, I do.

6              THE COURT:  I'm going to ask the Government to set

7    forth the elements of the offense you're pleading guilty to

8    and what their evidence would show if the case went to trial.

9    Listen carefully to what she says because when she's done, I'm

10   going to ask you if you agree with what she just said.

11             Ms. Whelan.

12             MS. WHELAN:  Thank you, Your Honor.  The elements of

13   the came of wire fraud as charged in Count 6 of the indictment

14   are as follows:

15             First, that the defendant, Trina Marie Welch,

16   knowingly participated in and devised a scheme or plan to

17   defraud or a scheme or plan for obtaining money or property by

18   false or fraudulent pretenses, representations, or promises.

19   Second, that the statements and representations Ms. Welch made

20   or facts she omitted as part of the scheme were material; that

21   is, they had a natural tendency to influence or were capable

22   of influencing a person to part with money or property.

23   Second [sic], that Ms. Welch acted with the intent to defraud;

24   that is to say, the intent to deceive or cheat.  And finally,

25   that Ms. Welch used or caused to be used an interstate wire

1   communication to carry out or attempt to carry out an

2   essential part of the scheme.

3          Your Honor, the defendant has admitted in this plea

4   agreement that the following facts are true, and the

5   Government could prove this beyond a reasonable doubt:

6          Kasco of Idaho, LLC, and Kasco Communications, LLC,

7   which herein are jointly referred to as Kasco, are limited

8   liability companies located in Idaho.  Keith Sims is the owner

9   of Kasco.  The defendant, Trina Marie Welch, was an employee

10  of Kasco from 2012 until July of 2019.  Ms. Welch was the

11  company bookkeeper.  She utilized various accounting software

12  programs and the Internet and oversaw all accounting for

13  Kasco.

14         Kasco maintained a business checking account with

15  Global Credit Union.  Ms. Welch used software which was

16  connected to Kasco's business account at Global Credit Union

17  to make withdrawals and fund transfers.  Global Credit Union

18  is a financial institution with offices and branches in

19  Washington, Idaho, and Italy.  Physical and online deposits,

20  withdrawals, and fund transfers from a Global Credit Union

21  account resulted in an interstate wire transfer of financial

22  information through the United States Federal Reserve in San

23  Francisco, California.

24         During the time that Ms. Welch was employed at Kasco,

25  she maintained her own banking and credit cards with the Bank

1    of America.  Bank of America is a financial institution with

2    offices throughout the United States, including Idaho.

3    Physical and online deposits, withdrawals, and fund transfers

4    made with Bank of America resulted in an interstate wire

5    transfer of financial information, including through the

6    United States Federal Reserve in San Francisco, California.

7            Beginning in at least 2013 and continuing until the

8    day she was terminated on July 3, 2019, Ms. Welch used her

9    position as a bookkeeper and the overseer of accounting for

10   Kasco to engage in a scheme to defraud Kasco and engage in a

11   scheme to obtain money and property by making materially false

12   and fraudulent representations and promises.  Ms. Welch

13   engaged in this scheme with the specific intent to defraud her

14   employer, Kasco.

15           In summary, the scheme that Ms. Welch engaged in

16   involved her embezzling funds from Kasco by unlawfully and

17   without authority making withdrawals and writing and creating

18   checks which were drawn on Kasco's checking accounts at Global

19   Credit Union, including Kasco's account ending in 6220.

20   Ms. Welch made these checks payable to her personal credit

21   card accounts, and the money was applied to Ms. Welch's

22   personal credit cards' outstanding balances.  She wrote or

23   caused to be written at least 341 fraudulent checks from

24   Kasco's bank accounts.

25           Ms. Welch took additional steps to conceal the fraud

1    by moving the money from her credit cards via a cash or bank

2    advance and then depositing those funds into her personal bank

3    accounts.

4         Ms. Welch used the personal bank account funds to

5    purchase and pay expenses for numerous properties wherein she

6    or others related to her are listed as the property owners,

7    including those real properties listed in the forfeiture

8    section of the plea agreement.  Ms. Welch agrees all of her

9    interest in these properties will be forfeited to the United

10   States.

11        The United States found that in addition to the

12   properties which were paid for with illegally received funds,

13   Ms. Welch spent money she embezzled from Kasco at spas, travel

14   for herself and family and friends, and other personal

15   endeavors.

16        In the year 2017 alone, Ms. Welch spent over $930,000

17   in excess of her gross earnings with just her Bank of America

18   credit card.  This money was all embezzled from Kasco.

19        The specific check which provides the factual basis

20   for Count 6 is as follows:  It is dated on or about October 6,

21   2017.  It was written on a Kasco of Idaho Global Credit Union

22   check from the account ending in 6220, and it was written to

23   the Bank of America credit card account ending in account

24   7726.  The amount of that check was $48,889.66.

25        Ms. Welch admits that she knowingly participated in

1   and devised a scheme or plan to defraud and a scheme or plan

2   for obtaining money or property by means of false or

3   fraudulent pretenses, representations, or promises.

4          Ms. Welch understands the Government contends that

5   during the course of the scheme, she obtained fraudulent

6   proceeds of at least $3,674,338.86.  She admits the statements

7   and representations made or facts omitted as part of the

8   scheme were material -- that is, they had a natural tendency

9   or were capable of influencing a person to part with money or

10  property -- and she admits she did these actions with the

11  intent to defraud.

12         Finally, she admits that she used or caused to be

13  used an interstate wire communication to carry out or attempt

14  to carry out an essential part of her scheme.

15         She admits that these events occurred in the District

16  of Idaho and elsewhere.

17         Your Honor, I mentioned the forfeiture properties.  I

18  think they're included by reference in the plea agreement.

19  I'm presuming the Court does not want me to list all of those.

20         THE COURT:  No, I don't.

21         MS. WHELAN:  Thank you, Your Honor.

22         THE COURT:  Ms. Welch, do you agree with the

23  prosecutor's summary of what you did?

24         THE DEFENDANT:  Yes, I do.

25         THE COURT:  Was there anything she said that you

1    disagree with?

2              THE DEFENDANT:  No.

3              THE COURT:  Has anyone threatened you or anyone else

4    or forced you in any way to plead guilty?

5              THE DEFENDANT:  No.

6              THE COURT:  I understand that you've signed a plea

7    agreement with the Government.  Is that correct?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Do you have a copy of that in front of

10   you?

11             THE DEFENDANT:  I do.

12             THE COURT:  Did you read every provision of the plea

13   agreement before you signed it?

14             THE DEFENDANT:  Yes, I did.

15             THE COURT:  And did you go over every provision of

16   the plea agreement with your attorney before you signed it?

17             THE DEFENDANT:  Yes, I did.

18             THE COURT:  And did you make sure that you understood

19   each and every provision of the plea agreement before you

20   signed it?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Do you understand that the plea agreement

23   contains a provision whereby you are waiving or giving up some

24   or all of your right to appeal the conviction and/or the

25   sentence or to pursue habeas corpus relief?

1          THE DEFENDANT:  Yes.

2          THE COURT:  More specifically, the appellate waiver

3    waives all appellate rights with only three exceptions.  One

4    is the sentence exceeds the statutory maximum.  The second is

5    that the Court arrived at a sentencing guideline range by

6    applying an upward departure.  And the third is that the Court

7    exercised its discretion under 3553(a) to impose a sentence

8    that exceeds the guideline range.

9          Those three circumstances are the only circumstances

10   where you have a right to an appeal.  Do you understand that?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Has anyone made any promise, other than

13   those made in the plea agreement, that induced you to plead

14   guilty?

15         THE DEFENDANT:  No.

16         THE COURT:  There's a couple of provisions in the

17   plea agreement I want to mention on the record.  The first

18   provision calls for the Government to move to dismiss certain

19   counts, all counts except Count 6.

20         If you plead guilty today, the Court will examine the

21   presentence report once it's issued and decide whether or not

22   to accept the plea agreement and dismiss the other counts.

23   The Court is required not to accept your plea agreement if it

24   does not adequately address the totality of your criminal

25   conduct.

1        If I reject the plea agreement, I will notify you of

2   that at the time of sentencing, and I will give you the

3   opportunity to withdraw your guilty plea, and then you would

4   stand trial on all counts in the indictment.  Do you

5   understand this?

6        THE DEFENDANT:  Yes, I do.

7        THE COURT:  The second provision calls for the

8   Government to make certain recommendations on your behalf at

9   the time of sentencing.  However, the Court is not required to

10  accept the Government's recommendations.  I could reject them

11  and impose a more severe sentence than recommended by the

12  Government.  Likewise, as I've already mentioned, I have the

13  authority to depart from the guidelines and to impose a

14  sentence that is longer than that called for by the

15  guidelines.

16       You will not have the opportunity to withdraw your

17  guilty plea even if the sentence I impose is longer than what

18  the Government recommends and longer than the sentence called

19  for by the guideline range.  Do you understand that?

20       THE DEFENDANT:  Yes.

21       THE COURT:  If you plead guilty today, I will examine

22  the presentence report and decide whether or not to accept the

23  plea agreement.

24       Has anyone made any prediction or promise to you as

25  to what your sentence will be?

1          THE DEFENDANT:  No.

2          THE COURT:  Ms. Rubin, are you satisfied that your

3    client's plea of guilty would be a knowledgeable and voluntary

4    plea?

5          MS. RUBIN:  I am, Your Honor.  May I just have one

6    moment?

7          THE COURT:  You may.

8          MS. RUBIN:  Thank you.

9       (Discussion between the defendant and counsel.)

10          MS. RUBIN:  Thank you, Your Honor.

11          THE COURT:  All right.  Ms. Welch, what is your plea

12    to Count 6 as charged in the indictment?

13          THE DEFENDANT:  Guilty.

14          THE COURT:  I hereby find that your plea of guilty to

15    Count 6 is a knowing and voluntary plea, supported by an

16    independent basis in fact, containing all of the essential

17    elements of the offense.  I hereby accept your plea and enter

18    a judgment of guilty as to the crime charged in Count 6 of the

19    indictment.  I take under advisement the decision whether to

20    accept the terms of the plea agreement pending my review of

21    the presentence report.

22          I will order a presentence investigation report, and

23    you will have an opportunity to examine that report and to

24    file any objections you may have to the report.  Under the

25    Federal Rules of Criminal Procedure, any objections must be

1  made in writing within 14 days after you receive the report.

2  Failure to file those objections will be a waiver of the right

3  to object.

4       Patti, I hope I'm right on this, but it looks to me

5  like our sentencing date is going to be April 13 at 9:00 a.m.

6  Is that right?

7       THE COURTROOM DEPUTY:  Correct, yes.

8       THE COURT:  That means that the presentence report

9  will be due to counsel on March 2.  Counsels' objections will

10  need to be filed by March 16, and the final report will be due

11  on March 30.

12       Now, there is also a hearing that we need to have on

13  restitution and forfeiture.  I was going to set that --

14       MS. RUBIN:  Your Honor, may I just -- I don't mean to

15  interrupt the Court.

16       THE COURT:  Go ahead.

17       MS. RUBIN:  We had an opportunity -- I did want to

18  give the Court a heads-up, and this is with the agreement of

19  Ms. Whelan.  Ms. Whelan and Mr. Roberts and I have had a

20  chance to discuss the issue of the restitution hearing as well

21  as the sentencing hearing in this case.

22       I think all parties recognize that with regard to the

23  restitution hearing, there are things that I think we hope to

24  be able to work together on, but we anticipate that there may

25  be some arguments with regard to differences in amounts that

1    we anticipate the restitution amount may be.

2           In speaking very frankly with the Court, I don't

3    think that we will honestly be ready for a restitution hearing

4    for the next couple of months because we're going to have to

5    bring in additional experts for that.  We're going to have to

6    work with Ms. Whelan and the experts that she has used and the

7    information that she will provide to us.

8           I think the parties had contemplated perhaps a -- and

9    correct me if I'm wrong, Traci -- but perhaps a May or June

10   date for restitution and a July or August date for sentencing.

11   We thought that the sentencing hearing should follow the

12   restitution hearing with a 30- to 45-day window.

13          MS. WHELAN:  That is correct, Your Honor.  I think we

14   had spoken with Ms. Beers about that, but I think we failed to

15   talk with Ms. Richmond about that.  So I think that error is

16   on us.

17          MS. RUBIN:  And I apologize, Ms. Richmond.  I think

18   the email just went to Ms. Beers.

19          THE COURT:  All I know is I got an email from

20   Ms. Beers -- who, by the way, is another one who's out with

21   COVID.  She set this sentencing date that I have, but it may

22   have been before you talked to her.

23          MS. RUBIN:  And, Your Honor, I'm happy to file a

24   motion.  If the Court wants to set it for April, I can

25   certainly file a motion, that I anticipate would be a joint

1    motion, to have the hearings rescheduled.  And that way the

2    Court has an opportunity to look at its schedule for the next

3    couple of months.

4          THE COURT:  Let's do that.  Let's go with what we've

5    said, and you go ahead and file a motion to continue or

6    whatever you want to call it.  And when we get that, we'll let

7    you know what the new dates will be.

8          MS. RUBIN:  Thank you, Your Honor.  I appreciate

9    that.

10         THE COURT:  All right.  Ms. Whelan, is the Government

11   seeking to detain the defendant prior to sentencing?

12         MS. WHELAN:  No, Your Honor.  The defendant, I think,

13   has -- as outlined in ECF 47, has maintained contact.  I know

14   her daughter is set to graduate from high school, and there's

15   lots going on there.  She's been compliant, and we see no

16   reason to change that as long as her compliance continues.

17         THE COURT:  Ms. Welch, based upon the record before

18   the Court, I find by clear and convincing evidence that if you

19   are -- if you remain released, you will not pose a risk of

20   flight or a danger to another person or the community.  I make

21   this determination because of your past record of appearances

22   and in reliance on the statements of the attorney for the

23   Government.

24         Having so found, I will continue your release pending

25   sentencing, but all existing pretrial release conditions shall

1    continue in effect.  And if those conditions are violated, the

2    penalty could be severe.  Do you understand that?

3            THE DEFENDANT:  Yes, I do.

4            THE COURT:  Now, in addition, I need to tell you that

5    failure to appear at your sentencing is a new crime for which

6    you could be sentenced to an additional term of imprisonment.

7    So don't -- don't fail to show up for sentencing.

8            THE DEFENDANT:  I understand.

9            THE COURT:  Counsel, I don't think -- I think that's

10   all I've got.  Do either of you have anything else?

11           MS. WHELAN:  No, Your Honor.

12           MS. RUBIN:  No, Your Honor.  We'll get that motion

13   filed immediately.  Thank you.

14           THE COURT:  Thank you.  Court will be in recess.

15       (Proceedings concluded at 3:41 p.m., January 25, 2022.)

16

17

18

19

20

21

22

23

24

25

1                        C E R T I F I C A T E

2

3          I, ANNE BOWLINE, a Registered Merit Reporter and

4   Certified Realtime Reporter, do hereby certify that I reported

5   by machine shorthand the proceedings contained herein on the

6   aforementioned subject on the date herein set forth, and that

7   the foregoing 23 pages constitute a full, true and correct

8   transcript.

9          Dated this 15th day of June, 2023.

10

11

12

13                        /s/ Anne Bowline

14                        ANNE BOWLINE
                     Registered Merit Reporter
15                   Certified Realtime Reporter

16

17

18

19

20

21

22

23

24

25