UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>TRINA MARIE WELCH,<br><br>      Defendant. | Case No. 2:20-cr-00052-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are several matters ripe for review. The Government has filed two Motions to Dismiss (Dkts. 101, 106) third-party claims (Dkts. 54, 60) that have been levied against property subject to forfeiture (Dkt. 52). One third-party claimant is Defendant Trina Marie Welch's[1] husband Norman Welch ("Norman"). Norman filed a response (Dkt. 107) to the Motion to Dismiss and the Government has, in turn, replied (Dkt. 109). The other third-party claimant is one of Trina's sons, Derrick Arthun ("Derrick"). He filed no such response to the Government's Motion.

Further, the Government and the primary victim of Trina's crime, Keith Sims, filed a stipulation to deposit any sale proceeds—which would normally be deliverable to Norman—to the clerk of the court overseeing a pending Idaho state civil court case per a

---

[1] For simplicity and to avoid confusion as there are multiple family members with the last name Welch, the Court will refer to the Defendant and all the petitioners by their first names.

preliminary injunction from that court. Dkt. 108. Norman filed a response in objection to the stipulation (Dkt. 110) and the Government replied (Dkt. 112).

The Court finds, when accepting all facts presented in the petitions as true, that there is no need for a hearing on these motions. *See* Fed. Crim R. 32.2(c)(1); Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons discussed below, the Court will GRANT the Government's Motions to Dismiss both third-party claims, DENY both claims, and hold the stipulation and objection in ABEYANCE pending any future need to address the issue.

## II. BACKGROUND

This is a criminal case. On February 19, 2020, a grand jury indicted Trina on fifteen counts of wire fraud in violation of 18 U.S.C. § 1343. Dkt. 1. The Indictment also included wire fraud forfeiture allegations which asserted that Trina would forfeit any and all proceeds obtained directly or indirectly as a result of her crimes. *Id.* at 6.

The underlying facts of Trina's criminal conduct can be summarized as follows: Trina embezzled funds from her employers, Kasco of Idaho, LLC, and Kasco Communications, LLC, (owned by Sims; collectively "Kasco"), and directed those fraudulent proceeds through her credit cards and bank accounts to pay for her personal expenses including, among other things, numerous properties held under her and related parties' names. *Id.* at 3. The scheme occurred between 2013 and July 2019, and included Trina directing at least 341 fraudulent checks from Kasco's bank accounts into her own accounts in the amount of approximately $3.6 million. *Id.* at 3–4.

On January 14, 2022, Trina entered into a plea agreement with the Government in which she agreed to plead guilty to count six of the Indictment. Dkt. 45. Trina also admitted

the asset forfeiture allegation in the Indictment.[2] *Id.* at 6–9. Ultimately, the Court sentenced Trina to 51 months of incarceration and ordered she pay $3,678,642.62 in restitution to Sims and Kasco, who were the identified victims of Trina's fraud. Dkt. 93.

During the pendency of the criminal case, the Government sought a Preliminary Order of Forfeiture related to six parcels of real property. Dkt. 51. A Preliminary Order of Forfeiture was entered on March 2, 2022.[3] Dkt. 52. Therein, the Court outlined that "any person asserting a legal interest in the Subject Property, or other forfeited property, must file a claim with the Court within the applicable deadlines." *Id.* at 5. Notice of forfeiture was published on an official government internet site beginning on March 8, 2022, and ending on April 6, 2022 (Dkt. 58), and was also sent via email or post to known interested parties on March 15, 2022 (*see* Dkts. 54 at 5; 59 at 3; and 60 at 5).

Several petitions were filed by interested parties objecting to forfeiture. Dkts. 53, 54, 56, 59, and 60. The Spokane Teachers Credit Union ("STCU") filed a petition related to one of the properties, 519 E. Walnut Ave. Dkt. 53. Thereafter, the Government and STCU negotiated and ultimately entered into a stipulated settlement agreement as to the interests of those parties (Dkt. 104) which the Court adopted (Dkt. 105).[4]

---

[2] The forfeiture allegations were amended by the Government, removing one property from the list in the Indictment and limiting the listed properties to six. Dkt. 32.

[3] A preliminary order of forfeiture is final only as to the Defendant. Fed. R. Crim. P. 32.2(b)(4). A final order of forfeiture, when necessary, addresses third party concerns. Fed. R. Crim. P. 32.2(c).

[4] As part of that agreement, an interlocutory sale was ordered with the proceeds going first to fees and the United States Marshal Service, second to property taxes, and third to the STCU. Dkt. 105. Remaining proceeds of the sale, if any, were not discussed in that order and are disputed in another petition discussed herein. *See* Dkt. 54.

Both Nickolas Arthun, Trina's son, and Jenna Arthun, Nickolas' wife, filed petitions related to one of the properties, 501 E. Walnut Ave. Dkts. 56, 59. Thereafter, the Government and both claimants negotiated and ultimately entered into a stipulated settlement agreement (Dkt. 99) as to their interests which the Court adopted (Dkt. 100).[5]

At issue here, is Norman's petition related to five of the properties (Dkt. 54) and Derrick's petition related to one of the properties (Dkt. 60). The Government now moves to dismiss both claims. Dkts. 101, 106. While Derrick did not respond to the motion, Norman did (Dkt. 107), and the Government replied (Dkt. 109).

Relatedly, and also at issue here, the Government, in conjunction with Sims and Kasco, entered into an agreement that, in the event any funds are directed to Norman (because of the forfeiture proceedings), those funds should be deposited with the Clerk of the court in the pending Idaho state court case rather than going to him or the Clerk of the Court in this case. Dkt. 108. Norman opposes that plan. Dkt. 110.

The Court will address each motion/issue in turn.

### III. DISCUSSION

#### A. Motion to Dismiss

##### 1.    Background

The real property referenced in the Indictment and Plea Agreement subject to forfeiture in this case was identified as follows:

1. Real Property located at **413 E. 9th Avenue, Post Falls, Idaho, Kootenai County, Idaho, being parcel number P1350009012A**, and more

---

[5] There are no other claimants to this property, accordingly, the judicial forfeiture process for that property is complete.

particularly described as follows:

The West half of vacated Post Street adjoining Lot 12, Block 9, Drumhellars Addition to Post Falls, according to the plat recorded in Block E of Deeds at Page 244, records of Kootenai County, Idaho, and the East 30 feet of Lot 12, Block 9, Drumhellars Addition to Post Falls, according to the plat recorded in Book E of Deeds, Page 244, records of Kootenai County, Idaho. (Owner of Record: Trina Welch).

2. Real Property located at **519 E. Walnut Avenue, Osburn, Idaho, Shoshone County, Idaho, being parcel number RPC0050037008AA**, and more particularly described as follows:

Lots 8 and 9, Block 37, Osburn Townsite, according to the official and recorded plat thereof, Shoshone County, State of Idaho. Together with that portion of the vacated alley running through Block 37 vacated by resolution recorded May 10, 1940 as Instrument No. 11383. Together with that vacated portion of Walnut Avenue adjacent to Block 37, by resolution recorded September 6, 1991 as Instrument No, 348939. (Owner of Record: Trina Welch)

3. Real Property located at **501 E. Walnut Avenue, Osburn, Idaho, Shoshone County, Idaho, being parcel number OCC00500370110A**, and more particularly described as follows:

Lot number: 11; Subdivision: Osburn; Block: 37; Sec/Twn/Rng/Mer: Sec 18 Twn 48 Rng 04; Tract: 9604002025 (Owner of Interest: Trina Welch)

4. Real Property located at **211 N. Hill Avenue, Smelterville, Idaho, Shoshone County, Idaho, being parcel number RPF01000070170**, and more particularly described as follows:

Lot 17, Block 7 of Smelterville First Addition, according to the official and recorded plat thereof filed in the official Records of Shoshone County, State of Idaho. (Owner of Record: Trina Welch)

5. Real Property located at **1253 Garden Ave., Osburn, Idaho, Shoshone County, Idaho, being parcel number RPC0100004013AA**, and more particularly described as follows:

E ½ of Lot 13 20-48-4 W ½ of Lot 14 Block 4 Dunkle Garden Add Osburn. (Owner of Interest: Trina Welch)

6. Real Property located in **St. Regis, Mineral County, Montana, Parcel No. 181400 (Lot 8) in Rivers Acreage**, a platted subdivision in Mineral County, St Regis, Montana, and more particularly described as follows:

Lot 8 of Two Rivers Acreage, a platted subdivision in Mineral County, Montana, according to the official recorded plat thereof. (Owner of Interest: Trina Welch)

Third-Party Derrick claims an interest in the property at 211 N. Hill Ave. "based on [his] right as a 50% owner of the property recorded." Dkt. 60, at 2. He further states why he believes he has a valid, good faith, and legally recognizable interest as follows: "I am an innocent owner of this property. This property was purchased for me and funded by my mom, Trina Welch, and I was to make payment for the purchase." Dkt. 60, at 14. Attachments show that the property was purchased with cash—but not who paid what amount of the purchase price—and that a transfer of that property to Derrick and Trina occurred on October 29, 2015. *Id.* at 20. The Government claims that Trina paid for the property in whole. It illustrates this transfer of funds in a flow chart, (Dkt. 101, at 4), which aligns with Derrick's statement above (Dkt. 60, at 14).

Third-Party Norman claims an interest in all properties (including 211 N. Hill Ave.) *except* for the property at 501 E. Walnut Ave. in Idaho.[6] Dkt. 54. Norman claims an interest in the 211 N. Hill Avenue property in Idaho "based on [his] right to and interest in property within the marital community with Trina Welch." *Id.* at 4. He further claims an interest in the 413 E. 9th Ave., 519 E. Walnut Ave., and 1253 Garden Ave. properties in Idaho, and the Parcel No. 181400 (Lot 8) in Rivers Acreage in Montana "based on [his] 50% undivided

---

[6] *See supra* notes 4–5.

interest of ownership as recorded under file." *Id.* For each of the properties that Norman claims an interest in, Norman also offers a date when his interest became effective.[7] *Id.* Norman offered no additional documentation supporting his claim. *See id.*

### 2.   Legal Standard

"State law determines whether Claimants have a property interest, but federal law determines whether or not that interest can be forfeited." *United States v. Hooper*, 229 F.3d 818, 820 (9th Cir. 2000). The Court's forfeiture authority originates from 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) which provides that, when imposing sentence on any person convicted of a violation of 18 U.S.C. § 1343, wire fraud, the court shall order that the person forfeit to the United States any property, real or personal, which constitutes, or is derived from, proceeds traceable to the commission of the offense. Unlike civil forfeiture, which is an *in rem* action, "a criminal forfeiture is an *in personam* judgment against a person convicted of a crime." *United States v. Lester*, 85 F.3d 1409, 1413 (9th Cir. 1996) (cleaned up); *see also* Fed. R. Crim. P. 32.2(b) advisory comm. notes (2000).

Forfeiture in a criminal case is essentially a two-stage process. First, the Court considers forfeiture of the criminal defendant's interest in identified property and issues a Preliminary Order of Forfeiture, forfeiting the defendant's interest to the United States. Fed. R. Crim. P. 32.2(a)–(b); 21 U.S.C. § 853(a). Second, under, § 853(n)(1)–(6) any person, other than the defendant, asserting a legal interest in the forfeited property may

---

[7] Except for the 211 N. Hill Ave. property. *See* Dkt. 54. While a failure to provide a date of interest could be dispositive in assessing Norman's petition, because this information is in the record (Dkt. 60, at 20) the Court finds that the requirement is satisfied.

petition the court in the "ancillary proceeding" for a hearing to adjudicate the validity of his or her alleged interest in the property. *See also* Fed. R. Crim. P. 32.2(c)(1). Upon resolution of the ancillary proceeding, the court will enter a "Final Order of Forfeiture," resolving the third-party claims. Fed. R. Crim. P. 32.2(c)(2); *see also* 21 U.S.C. 853(n)(7) (leaving clear title to the United States over all remaining property). This case is in the second stage of this process—ancillary proceedings.

> a.   Ancillary Proceedings for Third-Party Claimants

The ancillary proceeding has several steps: (1) the government must publish notice and may provide direct written notice to known interested parties; then (2) parties who wish to assert a legal interest must petition the Court for a hearing within thirty days of the final publication of notice or their receipt of direct written notice; (3) which petition shall contain all the elements listed in § 853(n)(3); then (4) and (5), the court shall hold, "to the extent practicable and consistent with the interests of justice," a hearing where evidence and testimony may be given; and finally (6) the Court will determine whether the petitioner has established their claim by a preponderance of the evidence and issue a Final Order of Forfeiture. 21 U.S.C. § 853(n)(1)–(6).

Before any hearing, but after disposing of motions to dismiss filed under Rule 32.2(c)(1)(A) of the Federal Rules of Criminal Procedure, the court may permit parties to conduct discovery. Fed. R. Crim. P. 32.2(c)(1)(B). After discovery, but still before any hearing, a party may move for summary judgment. *Id.* This case is between steps (3) and (4) of the ancillary proceeding and before it would be appropriate to order discovery: analyzing the Motions to Dismiss.

MEMORANDUM DECISION AND ORDER - 8

b. <u>Motions to Dismiss in Ancillary Proceedings</u>

"In the ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A). Such motions, filed before discovery or a hearing, should be treated like a motion to dismiss a civil complaint under Rule 12(b) of the Federal Rules of Civil Procedure. *See* Fed. R. Crim. P. 32.2(c) advisory comm. notes (2000) ("procedures akin to those available under the Federal Rules of Civil Procedure should be available to the court and the parties to aid in the efficient resolution of the claims").

Further, when ruling on such motions, the court presumes the facts set forth in the petitions to be true. Fed. R. Crim. P. 32.2(c)(1)(A); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). As with motions to dismiss in civil cases, Courts should allow the petitioner an opportunity to amend unless it is beyond doubt that amendment could not cure the deficiencies. *United States v. Furando*, 40 F.4th 567, 579 (7th Cir. 2022) (remanding a petition that was dismissed for lack of subject matter jurisdiction without first giving petitioner an opportunity to amend).

As a threshold matter, there are certain statutory requirements that must be met to determine whether the Petitioner has standing to bring the claim. Section 853(n)(3) requires that the petition shall: (A) under penalty of perjury be signed by petitioner, (B) allege the "nature and extent of the petitioner's right, title, or interest in the property," (C) allege the "time and circumstances of the petitioner's acquisition of the right, title, or interest in the

property," (D) contain "any additional facts supporting the petitioner's claim," and (E) state "the relief sought." 21 U.S.C. § 853(n)(3). Failure to contain the required elements, or a facial deficiency in any of the required elements, is grounds for dismissal as the petitioner would fail to state a claim and lack standing. Fed. R. Civ. P. 32.2 (c)(1)(A); *see also United States v. Walker*, 2018 WL 2323464, *2 (D. Idaho May 22, 2018) ("Failure to comply with the technical requirements of § 853(n)(3) will lead to dismissal of the petition."); *United States v. Klemme*, 894 F. Supp. 2d 1113, 1116–17 (E.D. Wis. 2012) (dismissing a petition that failed to contain all the elements found in § 853(n)(3) "with which courts require strict compliance"). In short, the petitioner needs to be able to show a legal interest in the property by complying with all the requirements in § 853(n)(3). Otherwise, the Petition may be dismissed.

> c.   Legal Interests in Property

As mentioned above, "State law determines whether Claimants have a property interest." *Hooper*, 229 F.3d at 820. The relevant inquiry is whether, under state law, the claimant establishes by a preponderance of the evidence that legal right, title, or interest in the property has vested with the claimant rather than with the convicted person at the time of the commission of the crime. *United States v. Nava*, 404 F.3d 1119, 1129 (9th Cir. 2005). "If state law would recognize an 'actual' owner over a 'straw' or 'nominal' owner," then a court must inquire whether the claimant is a mere nominal owner for the convicted person. *Id.* at 1129. "It takes clear and convincing evidence to dispossess a record title holder, who has exercised any of the usual privileges, of ownership." *Id.* at 1131 (cleaned up) ("such as residing on the property, transferring title, and taking out a second mortgage.").

i.       *Legal Interests in Idaho Property*

Under Idaho law, all property acquired during marriage is presumed community property. *Kawamura v. Kawamura*, 355 P.3d 630, 634 (Idaho 2015). However, there is no community property interest when a defendant violates a statute and § 853(n)(6)(A) should never apply to the proceeds of a crime. *See Hooper*, 229 F.3d at 821–22. The proceeds of a crime that are subsequently transferred to another person are subject to forfeiture unless the transferee is a bona fide purchaser for value. 21 U.S.C. § 853(c). Said another way, if the proceeds of a crime are transferred, that transfer can come only after the proceeds are acquired from the criminal activity. *Hooper*, 229 F.3d at 822.

When a defendant receives the proceeds from a crime he or she committed, the Government has title to those proceeds, not the defendant. That said, the Government's title is not perfected until forfeiture is decreed at which point title then relates back to the time of the crime—this is called the Relation Back Doctrine. *Id.*; *see also United States v. Parcel of Land, Bldgs., Appurtenances & Improvements, Known as 92 Buena Vista Ave., Rumson, N.J.*, 507 U.S. 111, 127 (1993) (stating that the Government's vesting of title occurs when the property became forfeitable and property becomes forfeitable at the time of the criminal act giving rise to the interest). Any claim that arises through community property comes from a transfer to the claimant (by operation of law) from the defendant and the Ninth Circuit has declined to extend the protections in § 853(n)(6)(A) to such claimants. *See Id.* at 823. Even if a question about acquisition of property before or after the commission of a crime arises, the Supreme Court of Idaho "has long held that the separate debts of either spouse may be paid from community property." *Credit Bureau of*

*E. Idaho, Inc. v. Lecheminant*, 235 P.3d 1188, 1192 (Idaho 2010).

In Idaho, outside of community property, "every interest created in favor of several persons in their own right is an interest in common" unless otherwise explicitly created. Idaho Code § 55-104. But "every instrument affecting an estate in real property made with intent to defraud prior or subsequent purchases thereof, or encumbrancers thereon, is void." Idaho Code § 55-901 (cleaned up). And "every transfer of property with intent to delay or defraud any creditor or other person of his demands, is void." Idaho Code § 55-906 (cleaned up). Any defendant "pleading guilty to a fraudulent scheme is 'sufficient to establish the actual intent to hinder, delay, or defraud creditors,' and thereby provides a basis for a court to determine that a related transfer is a fraudulent conveyance." *United States v. Peterson*, 820 F. Supp. 2d 576, 583 (S.D.N.Y. 2011), *aff'd sub nom. United States v. Crew*, 537 F. App'x 3 (2d Cir. 2013) (citing *In re Slatkin*, 525 F.3d 805, 814 (9th Cir. 2008) (ruling on the existence of a Ponzi scheme establishing intent of the defendant)).

### ii. Legal Interests in Montana Property

"Montana presumes that a person possessed of the record title is the lawful owner." *Nava*, 404 F.3d at 1129; *see* MONT. CODE ANN. § 70–19–404. "Montana has, by statute, recognized two trust doctrines—resulting and constructive trusts—that allow parties to pierce the veil of apparent, recorded title to real property." *Nava*, 404 F.3d at 1130. "A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if the holder were permitted to retain it." Mont. Code Ann. § 72–38–123.

The Montana Supreme Court has repeatedly affirmed that a court may simply

declare, without anything else, that a constructive trust exists. *N. Cheyenne Tribe v. Roman Catholic Church ex rel. Dioceses of Great Falls/Billings*, 296 P.3d 450, 456 (Mont. 2013) (stating that there is "no requirement of wrongdoing by the defendant in order to impose a constructive trust" (cleaned up)); *see also In re Jurgens*, 620 B.R. 115 (Bankr. D. Mont. 2020) ("this Court has broad discretion afforded by principles of equity to impose a constructive trust despite lack of any wrongdoing by the person holding the property," (cleaned up)).

To determine if a person has been unjustly enriched, the Court must be determined if: (1) a benefit has been conferred on that person, (2) that person has an appreciation or knowledge of the benefit, and (3) the acceptance or retention of the benefit by that person under such circumstances would make it inequitable for that person to retain the benefit without payment of its value. *See Volk v. Goeser*, 367 P.3d 378, 389 (Mont. 2016). If a person has been unjustly enriched, a constructive trust arises, and to work an equitable result, that person has "an equitable duty to convey it, or a portion thereof, to another." *Id.* at 390.

### d. Forfeiting a Property Interest

As mentioned above, "federal law determines whether or not [a property] interest can be forfeited." *Hooper*, 229 F.3d at 820. If a petitioner has failed to satisfy the requirements in § 853(n)(3), then their claim is dismissed with prejudice if an amendment of their claim would not cure the deficiencies. *See Walker*, 2018 WL 2323464, at *2. If a petitioner has made a claim satisfying the requirements in § 853(n)(3), the court may then hold a hearing to see if the petitioner satisfies the requirements of § 853(n)(6). 21 U.S.C. §

853(n)(4)–(5). If the petition contains enough facts, taken as true, that the hearing would be unnecessary, the court can then make a determination and "amend the order of forfeiture in accordance with its determination." 21 U.S.C. § 853(n)(6).

The Court must determine whether a petitioner has established by a preponderance of the evidence one of two recognizable interests. 21 U.S.C. § 853(n)(6)(A)–(B). "They must either show that they are bona fide purchasers for value without notice, *see* § 853(n)(6)(B), or they must show that their property interest meets certain specified requirements, *see* § 853(n)(6)(A)." *Hooper*, 229 F.3d at 821.

The Ninth Circuit has held that the temporal requirement found in § 853(n)(6)(A)—"at the time of the commission of the acts which gave rise to the forfeiture"—applies to both clauses: "'vested in the petitioner rather than the defendant' and the alternative 'or was superior to any right, title, or interest of the defendant.'" *Id.* "The intent of the requirement is to prevent a defendant from defeating forfeiture by conveying title prior to conviction." *Id.* at 821 (cleaned up). Therefore, "claimants' legal interest, if any, must have been vested in claimants at the time the defendant committed their crimes." *Id.* (cleaned up). It is likely, therefore, that § 853(n)(6)(A) will never apply to the proceeds of a crime, only to the instrumentalities of a crime. *Id.* at 822. "Proceeds of a crime do not precede the crime." *Id.*

The only way for a claimant to have a valid interest in property proceeds of a crime is for the claimant to be a bona fide purchaser for value. 21 U.S.C. § 853(n)(6)(B).

3. *Analysis*

a. <u>211 N. Hill Avenue, Smelterville, Idaho</u>

Both Norman and Derrick claim an interest in the 211 N. Hill Ave. property. Norman based his claim on a community property interest arising from his marriage to Trina who is a recorded owner of the property and Derrick based his claim on the idea that he, himself, is a recorded owner of the property. Both claimants need to satisfy the requirements of § 853(n)(3) before the Court can determine a valid interest.

Derrick's petition alleges the nature and extent of his interest (a 50% ownership of record); alleges the time and circumstances of his acquisition (an October 29, 2015, sale date); contains additional facts (a statement that Trina purchased the property for him and a Warranty Deed for the property with other title documents); and states the relief sought (an interest in the property). Derrick, however, has issues with the declaration under penalty of perjury.

Derrick signed the petition on April 13, 2022, the notary signed the petition on April 22, 2022, and the petition was filed on April 19, 2022. Dkt. 60, at 1–2. The Court is uncertain how the notary was able to sign an already filed claim and is further worried that even if a clerical error occurred in the filing process, Derrick did not actually sign in front of the notary given the discrepancy of the dates. If it were not for these discrepancies, there would be no question that Derrick adequately filed a petition and would be eligible to move forward in the ancillary procedure.

Norman's petition was signed appropriately under penalty of perjury; alleges the nature and extent of his interest (a community property interest); and states the relief sought

MEMORANDUM DECISION AND ORDER - 15

(an interest in the property). Norman, however, does not provide any additional facts supporting his claim, or allege the time and circumstances of his acquisition of interest. If it were not for these discrepancies, there would be no question that Norman adequately filed a petition and would be eligible to move forward in the ancillary procedure.

Normally, the Court would grant the Motions to Dismiss the petitions for failure to meet the procedural requirements in § 853(n)(3), failure to state a claim, and lack of standing and give the petitioners leave to amend. The Court, however, will not do that in this case because, even if these procedural deficiencies did not exist, it would still dismiss on substantive grounds. Said differently, the Court will overlook the defects identified and assume, for purposes of the remaining analysis, that all the facts alleged in the petition are true and sufficient to satisfy § 853(n)(3). For Derrick, there is a likely probability that a clerical error occurred in either the filing or notary's dates, and the Court will consider the requirement satisfied. For Norman, because the additional facts that would support his claim and the required time and circumstances of his acquisition of interest can be found elsewhere in the record (Dkt. 60, at 20), the Court will consider the requirement satisfied.

Nevertheless, there is no need to allow amendment, engage in discovery, allow further motion practice, or hold a hearing in this case because even taking Derrick and Norman's claims as true—which the Court must at this stage—neither can establish valid ownership interests in this property.

Derrick's own statement that his mother, Trina, purchased the property for him, and the Government's showing that Trina paid for the entire property out of her own funds illustrates that Derrick is not a bona fide purchaser for value. If anything, he is the recipient

of a gift from his mother. His claim that he "was to make payment for the purchase" is inconsistent with his statement that, "this property was purchased *for* me and *funded by* my mom." Dkt. 60, at 14 (emphasis added). This makes Derrick a nominal or straw owner rather than an actual owner. While Idaho doesn't recognize such ownership as Montana does, Idaho does recognize that transfers of property intended to defraud are void.

Trina pled guilty to wire fraud and admitted that elements of the crime occurred between 2013 and 2019. Trina purchased this particular property in 2015. There is no way to divorce the illegally obtained money from any money used to purchase this property or to divine "which money" Trina used. Using the proceeds of the crime she pled guilty to cannot create a valid interest in the property. Rather, from the moment of the crime, the Government had imperfect title to the criminal proceeds and that title perfects when the final order of forfeiture is decreed. Thereafter the Government's perfected title will relate back to the time of the crime. For this reason, Trina's purchase of the property was actually the Government's purchase of the property, and any purported transfer of the property is subject to forfeiture unless Derrick can show he is a bona fide purchaser. Derrick cannot.

Likewise, because a spousal community property interest exists only after a person acquires a legal interest in the property, Norman has no prior interest in the property. As with Derrick, because Trina was the sole purchaser of the property, Norman is also not a bona fide purchaser. Even if the Court were to find that Norman had a valid community property interest, the Supreme Court of Idaho has held that community property can be used to satisfy the debts of either spouse, so Norman would have no valid claim to the 211 N. Hill Ave. property as his community property interest may be used to satisfy Trina's

debts. *Lecheminant*, 235 P.3d at 1192.

For these reasons the Court finds that neither Derrick nor Norman have any valid interest in the 211 N. Hill Ave. property. Furthermore, the Court finds that no amendment could change this fact; thus, amendment will not be permitted.

> **b.** **413 E. 9th Ave., Post Falls, Idaho; 519 E. Walnut Ave., Osburn, Idaho; and 1253 Garden Ave., Osburn, Idaho**

Norman claims an interest in the 413 E. 9th Ave., Post Falls, Idaho; 519 E. Walnut Ave., Osburn, Idaho; and 1253 Garden Ave., Osburn, Idaho properties, all on the same basis. Norman's basis is the same as Derrick's basis was for the 211 N. Hill Ave. property—a recorded owner of the property.

For all three properties, Norman's petition was signed appropriately under penalty of perjury; alleges the nature and extent of his interest (an undivided 50% interest of ownership as recorded); alleges the time and circumstances of acquisition (alleging specific dates for each);[8] and states the relief sought (an interest in the properties in question). Norman, however, does not provide any additional facts supporting his claim. But such additional facts are not necessarily required if the other four requirements are sufficient to establish an interest in the property. As before, the Court assumes that all the facts alleged in the petition are true and sufficient to satisfy the procedural requirements of § 853(n)(3).

For the same reasons as explained in regard to the 211 N. Hill Ave. property, Trina's interest was never a valid interest as all three properties were purchased using funds that

---

[8] July 30, 2014, for 413 E. 9th Ave.; November 22, 2017, for 519 E. Walnut Ave.; and May 10, 2018, for 1253 Garden Ave. Dkt. 54, at 4.

came from Trina's criminal actions. The Government's title relates back to the time of the purchase since it occurred during the time of the crime. Norman provided no facts alleging that he used any of his own funds to purchase the property, made no claims that he is a bona fide purchaser for value, and has not expressed any prior interest or superior legal title in the property.

Additionally, Norman has offered no evidence that he has exercised any of the usual privileges of ownership. For these reasons the Court finds that Norman has no valid interest in the 413 E. 9th Ave., Post Falls, Idaho; 519 E. Walnut Ave., Osburn, Idaho; and 1253 Garden Ave., Osburn, Idaho properties. Again, this is a legal certainty. No amount of discovery or amendment could change the fact that Trina acquired these properties *during* the commission of her crimes. Norman cannot have an interest and amendment need not be granted.

> c.      Parcel No. 181400 (Lot 8) in Rivers Acreage, St. Regis, Montana

Norman claims an interest in the Lot 8 in Rivers Acreage, St. Regis, Montana property. Norman's basis is the same it was for the three other properties in Idaho just discussed. Here however a slight change in analysis is needed as the property is in Montana rather than Idaho.

Norman's petition was signed appropriately under penalty of perjury; alleges the nature and extent of his interest (an undivided 50% interest of ownership); alleges the time and circumstances of acquisition (May 22, 2017); and states the relief sought (an interest in the property). Norman, however, does not provide any additional facts supporting his claim. But such additional facts are not necessarily required if the other four requirements

are sufficient to establish an interest in the property. Again, the Court assumes that all the facts alleged in the petition are true and sufficient to satisfy the procedural requirements of § 853(n)(3). Again, Trina and Norman acquired the property with Trina's fraudulently acquired money. While Norman has not been accused, let alone found, of any wrongdoing, Trina has. As stated earlier, under the Relation Back Doctrine, the use of criminally acquired proceeds creates an imperfected title in the Government that relates back to the time of the crime.

While there is a presumption that Norman holds legal title in Montana, the Court finds that Norman has, and holds, only a constructive trust for the Government. Norman has an equitable duty to convey his interest to the Government to prevent unjust enrichment. Norman has received a benefit, Norman has a knowledge of that benefit, and under the circumstances it would be inequitable for Norman to retain that benefit without payment of its value. Norman has alleged no payment by himself for the property in question, rather the Government has shown that the property was paid for by Trina's criminal actions creating a veil of apparent, recorded title to real property. It is Norman's duty to convey his interest to the Government.

Additionally, Norman has offered no evidence that he has exercised any of the usual privileges of ownership. For these reasons the Court finds that Norman has no valid interest in the Lot 8 in Rivers Acreage, St. Regis, Montana property. Again, the fact that this property was obtained *during* Trina's criminal conduct means Norman cannot have a legal interest OR that any interests he has was the result of a fraudulent transfer. Accordingly, because no facts could change the Court's reasoning, amendment will not be granted.

MEMORANDUM DECISION AND ORDER - 20

### B. Stipulation Regarding Funds

Given that the Court has disposed of all of Norman's claims for the real property in question, the need for a stipulation to direct those funds toward the pending Idaho state court case is unnecessary. But, given the possibly of some unforeseen event, the Court will not rule on the stipulation and will instead hold approval of the Stipulation in ABEYANCE.

## IV. CONCLUSION

Trina's fraudulent actions gave her access to funds that were not hers. She used these funds to purchase and acquire real property in both Idaho and Montana. She gifted an interest in one of those properties to one of her sons, Derrick. And, as a function of community property law, her husband Norman "received" an interest. Trina, however, never had valid title to the funds used to purchase the properties and therefore never had valid title to the properties either. Rather, the Government had unperfected title that related back to the time her criminal activity began. Any subsequent transfers (by Trina), or any ownership interests that arose (by law) are, therefore, void. Only a bona fide purchaser for value would be able to acquire an interest or title from her. Neither Norman nor Derrick are bona fide purchasers for value. That is a legal certainty. No amount of discovery will change that and, therefore, amending their petitions would be futile. In sum, Norman and Derrick have no standing to challenge forfeiture, they have no third-party claim or interest, and the Government's Motion to Dismiss for failure to state a claim upon which relief may be granted must be granted.

For this reason, and the reasons discussed above, the Court finds that Norman and Derrick have no interest or title in the properties in question and GRANTS the

MEMORANDUM DECISION AND ORDER - 21

Government's Motions to Dismiss, DISMISSES with PREJUDICE Norman and Derrick's

Claim of Assets, and holds in ABEYANCE the stipulation and objections related thereto.

## V. ORDER

It is HEREBY ORDERED that:

1. The Government's Motion to Dismiss (Dkt. 101) is GRANTED.

2. Derrick Arthun's Claim of Assets (Dkt. 60) is DISMISSED with PREJUDICE.

3. The Government's Motion to Dismiss (Dkt. 106) is GRANTED.

4. Norman Welch's Claim of Assets (Dkt. 54) is DISMISSED with PREJUDICE.

5. The Stipulation between the Government and Keith Sims (Dkt. 108) is HELD in
   ABEYANCE.

6. Normal Welch's objection (Dkt. 110) is held in ABEYANCE.

DATED: July 24, 2023

David C. Nye
Chief U.S. District Court Judge