UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:20-cr-00052-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| TRINA MARIE WELCH, | |
| Defendant. | |

## I. INTRODUCTION

Before the Court are several matters ripe for review. Third-Party claimant Norman Welch has filed a Motion for Reconsideration of the Court's prior order regarding his claim of assets. Dkt. 115. Defendant Trina Welch[1] then filed a 28 U.S.C. § 2255 petition. Dkt. 118. Shortly thereafter she filed a Motion to Stay. Dkt. 120. The Government then filed a Motion to Strike Norman's reply brief (Dkt. 121) and an Emergency Motion for Expedited Order Denying Trina's Stay Motion (Dkt. 123).

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

---

[1] For simplicity and to avoid confusion as there are multiple family members with the last name Welch, the Court will refer to the Defendant and all the petitioners by their first names after an original introduction.

Upon review, and for the reasons set forth below, the Court DENIES Norman's Motion to Reconsider, DENIES Trina's Motion to Stay, DENIES the Government's Motion to Strike, and DENIES as MOOT the Government's Motion for Expedited Order.

## II. BACKGROUND

The Court will not reiterate the factual background of this case as it is known to all parties. In short, Trina plead guilty to wire fraud for embezzling money from her employer and the Court sentenced her to 51 months of incarceration and ordered she pay $3,678,642.62 in restitution. Dkt. 93.

There is some procedural background, however, the Court must cover to put today's motions in context.

As part of her Plea Agreement Trina admitted the asset forfeiture allegation in the Indictment.[2] Dkt. 45, at 6–9. Soon after, the Government sought a Preliminary Order of Forfeiture related to the six parcels of real property listed in the Indictment and the Plea Agreement. Dkt. 51. Those properties are defined as follows:

1. 413 E. 9th Ave., Post Falls, Idaho;

2. 519 E. Walnut Ave., Osburn, Idaho;

3. 501 E. Walnut Ave., Osburn, Idaho;

4. 211 N. Hill Ave., Smelterville, Idaho;

5. 1253 Garden Ave., Osburn, Idaho and

6. Parcel No. 181400 (Lot 8) St. Regis, Mineral County, Montana.

---

[2] The forfeiture allegations were amended by the Government, removing one property from the list in the Indictment and limiting the listed properties to six. Dkt. 32.

Dkt. 45, at 6–7. A Preliminary Order of Forfeiture was entered on March 2, 2022. Dkt. 52.

On March 31, 2022, Trina's husband Norman filed a petition for claim related to five of the six real properties (all but 501 E. Walnut). Dkt. 54. On April 19, 2022, Trina's son Derrick filed a petition claiming an interest in the property on Hill Ave. Dkt. 60. The Government eventually moved to dismiss both petitions. Dkts. 101, 106.

On September 19, 2022, the Court sentenced Trina and entered a corresponding Judgment against her. Dkts. 87–88. An Amended Judgment was entered on October 13, 2022. Dkt. 93. Both Judgments ordered the forfeiture of the real properties. Trina never filed an appeal of her conviction, her sentence, or the forfeiture of any property.

On March 31, 2023, the Court entered an order granting an interlocutory sale of the real property at 519 E. Walnut Ave, Osburn, Idaho. Dkt. 105.

On July 24, 2023, the Court issued a decision dismissing Norman and Derrick's claims. Dkt. 113. In short, the Court found that neither had properly alleged a valid interest in the properties they claimed an interest in. *See generally id*. Notably, the Court did not allow amendment because it appeared no amendment could save either claim. Specifically as to the 519 E. Walnut property, the Court found that it need not allow Norman an opportunity to amend because, "no amount of discovery or amendment could change the fact that Trina acquired th[is] propert[y] *during* the commission of her crimes" and Norman had "provided no facts alleging that he used any of his own funds to purchase the property, made no claims that he is a bona fide purchase for value, and has not expressed any prior interest or superior legal title in the property." *Id*. at 19 (emphasis in original).

The Court made similar findings as to the Montana property. *Id*. at 19–20.

On August 8, 2023, the Government sought a Final Order of Forfeiture. Dkt. 114.

On August 21, 2023, Norman filed a Motion to Reconsider the Court's dismissal of his claim as to the 519 Walnut property and the parcel in Montana. Dkt. 115.

On August 22, 2023, the Court issued a Final Order of Forfeiture as to all properties. Dkt. 116.

On September 1, 2023, the Government responded in opposition to Norman's Motion to Reconsider. Dkt. 117. Norman replied on September 28, 2023. Dkt. 119.

On September 20, 2023, Trina filed a Motion to Vacate under 28 U.S.C. § 2255. Dkt. 118. By statute, that motion created a new civil case. Case No. 2:23-cv-00415-DCN. A few days later, on September 29, 2023, Trina filed a document entitled Motion to Stay until the Ruling on the § 2255 Motion. Because this document referenced the § 2255 case, it was originally filed in the civil case. Case No. 2:23-cv-00415-DCN, Dkt. 4. Upon review, the Court later determined it was better suited in the criminal case. It moved the Motion to the criminal case on October 4, 2023. Dkt. 120.

On October 11, 2023, the Government filed a Motion to Strike alleging Norman's reply to his Motion for Reconsideration was untimely. Dkt. 121.

On October 13, 2023, the Government responded in opposition to Trina's Motion to Stay. Dkt. 122. Despite this response, on October 19, 2023, the Government filed a Motion to Expedite resolution of Trina's Motion to Stay. Dkt. 123.

## III. DISCUSSION

### A. Motion for Reconsideration (Dkt. 115)

#### 1. *Legal Standard*

Norman does not state a standard for his present motion.

Nevertheless, a district court may, within its discretion, exercise its inherent power to grant a motion to reconsider in a criminal case. *See United States v. Lopez-Cruz*, 730 F.3d 803, 811 (9th Cir. 2013). Many courts have looked to analogous civil rules when invoking their authority to rule on a motion to reconsider in the criminal context. *Cf. United States v. Ramos-Urias*, 2019 WL 1567526, at *1 (N.D. Cal. Apr. 8, 2019) ("In the context of criminal cases, motions to reconsider are governed by the rules that govern equivalent motions in civil proceedings." (cleaned up). "In assessing motions for reconsideration in criminal cases, some courts have relied on the standard that governs motions for reconsideration under Federal Rule of Civil Procedure 59." *United States v. Vasquez*, 2014 WL 2548638, at *1 (E.D. Cal. June 5, 2014). The Court will, likewise, utilize Rule 59 for guidance in this situation.

Federal Rule of Civil Procedure 59(e) "permits a district court to reconsider and amend a previous order," but the Ninth Circuit instructs that the Rule offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (quoting 12 James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed. 2000)). Under Rule 59(e) "there are four limited grounds upon which" a district court may grant a motion for reconsideration: "(1) the motion is necessary to correct manifest errors of fact or law; (2)

the moving party presents newly discovered evidence; (3) reconsideration is necessary to prevent manifest injustice; or (4) there is an intervening change in the law." *Coffelt v. Yordy*, 2016 WL 9724059, at *1 (D. Idaho Nov. 30, 2016) (citing *Turner v. Burlington N. Sante Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003)). "[M]otions for reconsideration are generally disfavored, and may not be used to present new arguments or evidence that could have been raised earlier." *America Rivers v. NOAA Fisheries*, 2006 WL 1983178, at *2 (D. Or. 2006) (cleaned up).

Again, Norman does not clearly enunciate which of the limited grounds he relies upon in bringing his motion. He disagrees with the Court's prior decision, mentions the Court "erred," and that, in the absence of reconsideration, he will suffer "a travesty of justice." Dkt. 119, at 2. Norman's inartful pleadings aside,[3] the Court will construe his motion as falling under the "manifest injustice" prong of Rule 59(e)'s parameters.

*2. Analysis*

By statute, any third-party claiming an interest in forfeited property must file a petition that "set[s] forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." 21 U.S.C. § 853(n)(3). Said petition must be filed within thirty days of the final publication notice of forfeiture. 21 U.S.C. § 853(n)(2). Through the petition process, the claimant strives to show, by a preponderance of the evidence, that he has a superior "legal

---

[3] Unfortunately, as will be explained, these inartful pleadings are a reoccurring theme in this case.

right, title, or interest in the property" or was a "bona fide purchaser for value of the right, title, or interest in the property." 21 U.S.C. § 853(n)(6)(A)–(B).

As noted, Norman originally claimed an interest in five of the six properties subject to forfeiture. The Court found he had not sufficiently pleaded facts to meet either requirement under 21 U.S.C. § 853(n)(6)(A) or (B)—that he had a superior valid interest in any of the five properties or that he was a bona fide purchaser of any of the five properties. Dkt. 113, at 17–20.

Norman now moves the Court to reconsider its decision as to two of those properties: the property located at 519 E. Walnut and the parcel in Montana. He "waive[d] any further claim of interest" as to the 413 E. 9th Ave. and 1253 Garden Ave. properties.[4]

For context, Norman's claim petition outlined his interest in the subject properties as follows:

> I have an interest in the property located at and known as 519 E. Walnut Ave, Osbourn, Idaho 83849 (20-FBI-002790) Parcel #C0050037008AA based on my 50% undivided interest of ownership as recorded under file number 491538 in the Shoshone County Idaho Recorder's Office dated November 22, 2017.

> I have an interest in the property located at and known as Lot 8 of Two Rivers Acreage, Saint Regis, MT 59866 (20-FBI-002805) Parcel #54-2744-19-3-03 based on my 50% undivided interest of ownership as recorded under file number 116486 in the Mineral County Montana Recorder's Office dated May 22, 2017.

Dkt. 54, at 4. In its prior decision, the Court found that Norman's petition met most of the statutory requirements but did not "provide any additional facts supporting his claim, or

---

[4] Norman does not address the property at 211 N. Hill Ave. in his motion to reconsider. Thus, any argument as to that property is waived as well.

allege the time and circumstances of his acquisition of interest." Dkt. 113, at 16, 18, 19. Nevertheless, the Court overlooked the technical defects and proceeded to analyze Norman's claims. It found that, even taking his summary assertions at face value, he could not hold a superior interest or be a bona fide purchaser of either property. The Court so found because both properties were purchased in 2017 at the height Trina's scheme[5] and there was no way to "divorce the illegally obtained money from any money used to purchase this property or to divine 'which money' Trina used" to purchase any particular property. *Id*. at 17.

Without citing a single case for support, Norman now asks the Court to reconsider its decision because he and Trina purchased the 519 E. Walnut property with "monies lawfully borrowed," purchased the Montana property with "a lawfully borrowed loan," and developed the Montana property with funds "from the sale of a home that predate[d] Trina's employment with [the victim]," and "Norman's wages." Dkt. 115, at 2–3.

Tellingly, however, Norman *admits* in his motion that, "the Court is correct that [he] did not provide or plead these facts in his third-party claim." *Id*. at 2, 3. Because of this, he asks the Court to reconsider and allow him an opportunity to amend and provide this evidence.

As the Court outlined extensively in its prior decision, however, the purpose of the notice provisions and the timing requirements of 21 U.S.C. § 853 is to fairly apprise the Court (and the Government) of a claimant's interest in the property so that a

---

[5] Trina admitted that elements of the crime occurred between 2013 and 2019. Dkt. 45, at 4.

determination can be made whether that claim is valid. *See* Dkt. 113, at 8–10. Importantly, the applicable timeframe is limited to thirty days. While amendment is allowed to correct a deficiency in an *already alleged* and asserted ground for recovery, amendments that *add* grounds for recovery are not allowed.

Candidly, Norman has put the Court in an awkward position. On the one hand, if it does not allow Norman an opportunity to amend, he will lose any opportunity to recover an interest in these two properties. That is, admittedly, a travesty. However, if the Court allows Norman to come in now and assert these grounds for relief, the thirty-day deadline is meaningless. That is also a travesty.

The Court will not reconsider its decision and allow amendment for two reasons.

First, Norman expressly acknowledges he did not provide or plead facts supporting his claim *as required* by statute and there is no indication he could not have brought the information he now brings in his original petition. To allow him to come in now, after his failure to comply, would be contrary to general principles of justice, but it would also open the door for anyone to file deficient and perfunctory notices of claim in the hopes that they could develop a sufficient basis later. This does not serve the ends of the statue which is to parse through illegitimate claims and timely and accurately dispose of forfeited property.

Second, the information Norman offers now does little to help his argument. The factual basis outlined in the plea agreement did not give *any* indication that Norman owned any interest in any property. Trina agreed to the forfeiture of any property—including the six real properties described herein—which "constitutes, or is derived from, or traceable

to, proceeds of the scheme." Dkt. 45, at 7.[6] This fact, Norman's bare-bones petition, and a stated interest that arose *after* Trina's fraud commenced, led the Court to reason the properties were purchased with criminal proceeds. But even with these new allegations, Norman has not assuaged the Court's concerns. He claims the Court was "aware . . . that Norman did exercise the privilege of ownership by obtaining a mortgage on the . . . 519 [E.] Walnut" property. Dkt. 115, at 4. Not so. This is news to the Court. Norman did not bring this up in his original petition *or* in his response to the Government's Motion to Dismiss. Norman simply claimed a "50% undivided interest of ownership." He did not provide any facts, outline any timeline, or explain the nature and extent of his rights as statutorily required. Importantly, this "50% ownership" language is the same stock language Norman used as his "basis for claim of interest" in four of the five properties. But now he has abandoned claims on two of those properties and asked for reconsideration on the other two—but based on the same information. In other words, to some degree Norman's actions prove the Court's point. The Court did not know then, and frankly still does not know now, how Norman's vague, summary claim of interest would provide it with sufficient evidence of an actual claim—especially when his summaries were identical for properties he does not now challenge.[7]

---

[6] There is even language that Trina is the "sole owner" of these properties. Dkt. 45, at 9. The Government now shares its belief that some funds not traceable to Trina's fraud may have been used to purchase the 519 E. Walnut property, but nevertheless alleges ill-gotten funds were used for upgrades and, in any event, Norman should not be allowed to amend because the deadline has run. Dkt. 117, at 5.

[7] The Court feels this point is important. If the Court's analysis as to the five properties was the same (which it was) and that analysis was based upon identical claims of interest (which Norman's claims were) but Norman is only challenging the Court's findings as to some of those properties and not others, how would the Court have divined any valid interest in some of the properties but not others (when again, the claim

Even now, Norman has not provided any concrete facts supporting his claim that he had a prior *valid* and/or *superior* interest in either property or that he was a bona fide purchaser for value of either property. He still has not provided *any* details, any timeframe, and any facts supporting his bald assertions. Norman vaguely asserts they bought the properties with some of his own money and/or money that pre-dated Trina's crimes. But as the Court noted before, there is no way to divorce Trina's illegally obtained funds during this timeframe with any other legitimate funds.[8] Or, at least, there does not appear to be. This, then, is why Norman asks for discovery to flesh these issues out.

But the Court has now come full circle. Norman avers that the Court said it would take the allegations in his petition as true, but then found them false. That is somewhat correct. The Court found Norman's petition was deficient but overlooked the technical deficiencies and allowed him to proceed. It could not, however, overlook, the simple fact that nothing in his claim indicated any *valid* property interest. For this reason, it had to dismiss. Just as in a civil case, the "factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca,* 652 F.3d

---

language was identical). In other words, Norman "acknowledges" the Court's analysis as to some of the properties. But the Court's analysis was the same as to all properties because his submissions were the same for all properties. Thus, it was not the Court's failure to grasp some aspect of Norman's claims (as to these properties or any others) that doomed his petition. It was his failure to properly support his assertions that lead to dismissal.

[8] The Court also highlighted in its decision that, even were Norman able to show he had a valid interest in the property it would not matter because the Idaho Supreme Court has held that community property can be used to satisfy debts incurred by the other spouse. Dkt. 113, at 11–12. In his Motion to Reconsider, Norman throws out a line about bankruptcy and how, in a bankruptcy filing, a spouse is absolved of any responsibility to repay debts, judgments, or obligations of the other spouse. Dkt. 115, at 4. The Court does not know if Norman has filed for bankruptcy or not, but that fact would not change the outcome today.

1202, 1216 (9th Cir. 2011). Moreover, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir.2009) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 681(2009)) (cleaned up). Norman's bare assertions that outlined the statutory elements were insufficient to carry his burden. And the Court did not see any reason to allow amendment because no set of facts could develop Norman's interest to a sufficient degree.

The Ninth Circuit has not squarely addressed the issue of belated substantive amendments to § 853 petitions. Other courts, however, have held that substantive amendments *after* the 30-day deadline are not allowed. *See, e.g., United States v. Lamid*, 663 Fed. Appx. 319, 324–25 (5th Cir. 2016) (affirming district court's denial of claimant's request to amend a claim to correct a defect under § 853(n)(3) because the 30-day deadline is mandatory and the amended claim would have been filed outside that window); *United States v. Soreide*, 461 F.3d 1351, 1355 (11th Cir. 2006) (finding claimant's "belated" argument that she had a superior interest in certain property need not be considered because she had not timely asserted those arguments in her original petition as required by statute); *United States v. Davis*, 2022 WL 313437,*6 n.42 (N.D. Tex. Feb. 2, 2022) (once the 30-day period for filing a claim expires, third parties "may not amend their petitions to include new grounds for relief"); *United States v. Strube*, 58 F. Supp. 2d 576, 585 (M.D. Pa. 1999) (to the extent that claimant amended her claim to add a new ground for relief after the 30-day period for filing a claim had expired, it was untimely, and the court was free to ignore

the additional ground for relief).[9]

One thing the Court wishes to highlight is, while the caselaw focuses primarily on amendments outside the thirty-day window, it also discusses how the Court cannot consider arguments even if they were raised in opposition to a motion to dismiss filed by the government. *See, e.g., Strube*, 58 F. Supp. 2d at 585. Here, the Court did not even have that benefit. It is truly only now, in a Motion to Reconsider, that the Court is being made aware of *how* Norman allegedly has an interest in these properties. Even then, it still does not have any "facts" setting forth the "nature and extent" of his rights.

Because of the substantial danger of false claims in forfeiture proceedings, federal courts require strict compliance with the requirements of § 853. The Court will not deviate from that here. Had Norman claimed what he is claiming now in his original petition, the Court would likely have allowed amendment because the ground for relief was already in the record but was factually deficient.[10] But it cannot allow Norman to amend after the 30-day deadline to add a new ground for relief.[11]

---

[9] Some courts have granted leniency when the claimant was pro se. *See, e.g., United States v. Sims*, 2020 WL 3415576, at *2 (N.D. Ala. June 22, 2020). That does not apply here, however, since Norman is represented by Counsel.

[10] In fact, the Court may have not even required amendment, but simply allowed the matter to proceed to discovery and a hearing.

[11] Norman does not make the argument, but one may wonder why the statement of a "50% ownership" is not a "ground for relief" and, as a result, why any amendment to explain that is simply an amendment to an already valid ground for relief as opposed to a wholly new claim for relief. Again, Norman's briefs are short, conclusory, and lacking in any caselaw for support, so the Court is not trying to argue against its own findings by raising this issue. But it wishes to emphasize that there was no way to tell from Norman's "50% ownership" language—which again was identical between four of the five properties—what his ground for relief actually was: a bona fide purchaser for value or a superior interest, how that interest arose, and under what timeframe and circumstances. So, the additional information Norman brings now is truly a "new" ground for relief, not just a clarification of a prior valid ground.

The Motion for Reconsideration is DENIED.

## B. Motion to Stay (Dkt. 120)

As noted, shortly after filing her § 2255 Petition, Trina filed a Motion to Stay. Dkt. 120. Therein, she asks the Court to stay this criminal case—including any orders related to forfeiture and restitution—until it has an opportunity to rule on her § 2255 Petition. The Court will not do so.

To begin, Federal Rule of Criminal Procedure 38(e)(1) provides that "[i]f the defendant appeals, the district court, or the court of appeals under Federal Rule of Appellate Procedure 8, may stay—on any terms considered appropriate—any sentence providing for restitution under 18 U.S.C. § 3556 or notice under 18 U.S.C. § 3555." Trina never appealed her conviction or sentence; thus, a stay is not appropriate under these provisions for restitution.

Similarity, under Federal Rule of Criminal Procedure 32.2(d) "the court may stay the order of forfeiture" if the defendant "appeals from a conviction or an order of forfeiture." Again, Trina has done neither of those things in this case and a stay of any forfeiture proceedings is, therefore, unwarranted.

Finally, "28 U.S.C. § 2255 is available to prisoners claiming the right to be released from custody. Claims for other types of relief, such as relief from a restitution order, cannot be brought in a § 2255 motion, whether or not the motion also contains cognizable claims for release from custody." *United States v. Thiele*, 314 F.3d 399, 400 (9th Cir. 2002). In short, a § 2255 Petition cannot be used to seek a stay of restitution enforcement. And, a

MEMORANDUM DECISION AND ORDER - 14

"forfeiture claim is not a cognizable § 2255 claim . . . ." *United States v. Finze*, 428 F. App'x 672, 677 (9th Cir. 2011) (citing *Thiele*, 314 F.3d at 402).

In sum, Trina presents no legally available option for staying her criminal case, including any associated restitution or forfeiture orders, because she never appealed.

The Motion is, therefore, DENIED. This case will not be stayed.

### C. Motion to Strike (Dkt. 121)

Norman filed his Motion to Reconsider on August 21, 2023. Dkt. 115. The Government replied eleven days later on September 1, 2023. Dkt. 117. Twenty-seven days after that, on September 28, 2023, Norman replied. Dkt. 119. The Government now asks the Court to strike Norman's reply as untimely. *See generally* Dkt. 121.

District of Idaho General Order 423 provides that all responsive memoranda in criminal cases must be filed "on or before the fourteenth (14th) day following the filing of any motion" and "any reply memoranda . . . must be filed on or before the seventh (7th) day following the filing of the response memoranda. Dist. Idaho Gen Order No. 423, at II(5).

What's more, the District of Idaho's Local Civil Rules, which are incorporated into the Local Criminal Rules (*see* Dist. Idaho Loc. Crim. R. 1.1(f)), outline that responses are due within twenty-one days of receiving the opening motion and replies within fourteen after receiving any response. Dist. Idaho Loc. Civ. R. 7.1(b)(3), (c)(1).

Norman's reply was filed on the twenty-seventh day following the Government's response. Thus, regardless of which calculation one utilizes, he was late.

The Court recognizes this. And it admonishes Norman (as it does all litigants in civil and criminal case) to strictly follow all local rules. The Court will not, however, strike Norman's reply, but will give it the weight it deems appropriate.[12] The Court takes this course because there is no prejudice to the Government in accepting Norman's reply and, frankly, Norman's reply does not change the Court's analysis in any measurable way.

The Motion to Strike (Dkt. 121) is DENIED.

**D. Motion for Expedited Order (Dkt. 123)**

Although the Government filed a memorandum in opposition to Trina's Motion to Stay, it also filed an Emergency Motion for Expedited Order Denying Defendant's Stay Motion. Dkt. 123.

The reason it did this was because the property at 519 E. Walnut is currently under contract for sale, but the title insurance companies will not insure the sale because of Trina's pending Motion to Stay. For these reasons, the Government asks that the Court expeditiously deny the stay and explain the sale can proceed; otherwise, it stands to lose the contract that is already in place *and* other fees and costs spent on ongoing maintenance of the property.

Insofar as the Court has already explained Trina's Motion to Stay is legally improper, it will not repeat that analysis here. Suffice it to say, there is no basis for staying this case as a whole or staying any ongoing restitution or forfeiture proceedings. The sale can proceed as planned.

---

[12] For this reason, the Court will not wait for Norman to respond to the motion either.

MEMORANDUM DECISION AND ORDER - 16

The Court notes a few additional points. First, Trina already stipulated to the forfeiture of this property as part of her Plea Agreement and waived "all challenges and objections, on any grounds, to any forfeiture in accordance with [the plea] agreement." Dkt. 45, at 7–8, 13. Second, the Court already granted the Government's Interlocutory Sale Motion as a result of its negotiations with the Spokane Teachers Credit Union ("STCU") and held that, if not sold, 519 E. Walnut was "at risk of losing value," that there was a "risk of deterioration due to the vacancy and also due of the non-payment of expenses necessary to maintain the property," that the "taxes are delinquent," and the "debt secured by the Subject Property owed to STCU is in default." Dkt. 105, at 2. Critically, neither Trina nor Norman objected to the Order of Sale. And the Court already issued a Final Order of Forfeiture as to this property. Dkt. 116

The pending contract for sale must close by November 2, 2023, or it will expire.[13] The Court will not review the costs and fees that will continue to amass if the property is not sold, but suffice it to say, they are significant.

The Court will not stay the sale. It should proceed as planned. Trina has not brought forth any legally valid reason to support a stay of the sale, a stay of forfeiture, or a stay of this case. And to the extent Norman has any say in the matter (owing to the ongoing issue with his claim of interest), the Court has disposed of that in this decision. And even if Norman seeks appellate review of the Court's denial of his Motion to Reconsider, such

---

[13] The United States Marshals have already extended the closing deadline once. It cannot be extended again. Dkt. 123-1, at 2–3.

does not mean the sale cannot proceed.[14]

In sum, the Court agrees with the Government that the sale can proceed uninhibited. To the extent it has already denied Trina's Motion to Stay—expeditiously or not—there is technically no longer any relief it can grant as part of this motion. Thus, the Government's Motion is DENIED as MOOT.

## IV. CONCLUSION

The Court will not reconsider its prior order. The parameters of 21 U.S.C. § 853 are clear. Norman should have included the information he now proffers as part of his original petition. Whether it would have changed the outcome of the Court's prior decision is irrelevant. But he cannot make those changes now when the deadline has long since passed.

The Court will not stay anything in this case pending the resolution of Trina's § 2255 Petition because there is no legal basis for such relief. Most, if not all, forms of a stay come after or during appeal and Trina has not appealed.

The Court will not strike Norman's untimely reply in support of his Motion to Reconsider. That said, he should be more conscientious of the applicable deadlines moving forward.

Finally, the Court has ruled on Trina's Motion to Stay. Accordingly, the Government's Motion to Expedite a ruling on that matter is all but moot. Regardless, the sale of the 519 E. Walnut property should proceed next week.

---

[14] Norman is not living at this residence and stopped paying the mortgage and utilities months ago. Any claim he has would simply be in the proceeds; not in the physical property itself. There is no need to stay the sale.

## V. ORDER

It is HEREBY ORDERED that:

1. Norman's Motion to Reconsider (Dkt. 115) is DENIED.

2. Trina's Motion to Stay (Dkt. 120) is DENIED.

3. The Government's Motion to Strike (Dkt. 121) is DENIED.

4. The Government's Emergency Motion (Dkt. 123) is DENIED as MOOT.

DATED: October 25, 2023

David C. Nye
Chief U.S. District Court Judge