UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>v.<br><br>TRINA MARIE WELCH,<br><br>　　Defendant. | Case No. 2:20-cr-00052-DCN<br>　　　　　　2:23-cv-00415-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court in the above-captioned related cases are several matters ripe for review.

In her criminal case ("CR-20-52"), Trina Welch filed a Motion to Dismiss or Amend (Dkt. 131), a Motion for Request of Information Regarding Properties (Dkt. 146), and a Petition for Home Confinement (Dkt. 154).[1]

In her civil cased filed under 28 U.S.C. § 2255 ("CV-23-415") Welch has filed an Application to Proceed in Forma Pauperis (Dkt. 2), and a "Supplemental Motion" (Dkt. 19).[2]

Additionally, Welch has filed two documents in both cases: a "Motion Asking the Honorable Court and Marshal Service for a Case Breakdown" (CR-20-52, Dkt. 148; CV-

---

[1] The Government also filed a Motion for Extension of Time to Reply to one of Welch's filings. CR-20-52, Dkt. 133. This Motion is GRANTED.

[2] These filings are in addition to the actual 2255 Petition, which is currently pending as well. CV-23-415, Dkt. 1.

MEMORANDUM DECISION AND ORDER - 1

23-415, Dkt 21), and a "Motion for Leave to Add Attachments" (CR-20-52, Dkt. 152; CV-23-415, Dkt. 25).

Because of the overlapping and interrelated nature of these documents, the Court issues this omnibus decision addressing all relevant filings. Additionally, it does so without oral argument, having determined the facts and legal arguments are adequately presented in the briefs and that the decisional process would not be significantly aided by oral argument. *See* Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

## II. BACKGROUND

The Court will not review the factual background of the underlying criminal case as it is known to all parties. Briefly though, Welch pleaded guilty to wire fraud for embezzling money from her employer. CR-20-52, Dkts. 45, 48. The Court sentenced Welch to 51 months of incarceration and ordered she pay $3,678,642.62 in restitution. Dkt. 93.

Some additional background information is worth noting to contextualize the Court's rulings on the motions at issue.

First, as part of her plea agreement, Welch admitted the asset forfeiture allegation in the Indictment. CR-20-52, Dkt. 45, at 6–9. Soon after, the Government sought a Preliminary Order of Forfeiture related to the six parcels of real property listed in Welch's Indictment and Plea Agreement. CR-20-52, Dkt. 51. Thereafter, Welch's husband and son filed petitions claiming an interest in various properties. CR-20-52, Dkts. 54, 60. The Court ultimately granted the Government's motion to dismiss these petitions. CR-20-52, Dkt. 113. The Court also denied Welch's husband's follow-up motion to reconsider (CR-20-52, Dkt. 125), and the Court's decision was recently affirmed by the Ninth Circuit. CR-20-52,

Dkt. 155.

Second, this has been a highly contentious case in the sense that it divided a small community. Gossip, Facebook posts, and texts between neighbors, friends, and co-workers abound. Sentencing in this matter was akin to a feature film where one half the town sat on one side of the gallery and the other half on the opposite with jeers, sneers, and whispers spanning the divide. Welch has accused the victim (her former boss)—Keith Sims—of orchestrating a smear campaign against her and her family. Sims has made similar allegations against Welch. The strife continues to this day as Sims tries to collect on the money owed to him under the Court's restitution award. In turn, Welch continues to argue Sims was complicit in her criminal activity and/or is guilty of crimes himself. The Court is aware that Sims has taken legal action in Idaho state court on these matters and that Welch filed a federal civil lawsuit against Sims to prevent those state court actions.[3]

The Court mentions this saga because the bulk of what Welch recites in each of the pending motions relates to her relationship with Sims, her belief that she was wrongfully prosecuted, and the notion that Sims should be prohibited from trying to collect any court-awarded restitution. But none of these issues are properly before the Court. The Court has jurisdiction over Welch. It has ordered certain financial obligations as part Welch's sentence. But Sims is not on trial here and the Court has no jurisdiction or authority over him. Likewise, the Court does not have jurisdiction over any Idaho state court proceedings.

---

[3] United States Magistrate Judge Deborah K. Grasham recently dismissed that suit because Welch failed to properly serve Sims. Case No. 2:23-cv-00580, Dkts. 43, 44. Welch has sought to reopen the matter. *Id*. at Dkt. 45.

MEMORANDUM DECISION AND ORDER - 3

Thus, although the Court acknowledges Welch's extensive allegations, questions, and concerns, it lacks authority to address many of them. Instead, the Court turns to the various motions and arguments properly before it, beginning with Welch's criminal case.

### III. DISCUSSION

**A. Motion To Dismiss or Amend Judgment (CR-20-52, Dkt. 131)**

*1. Background*

Welch first moves the Court for an order dismissing or amending the restitution judgment and forfeiture order. Welch states that she is "challenging the district court's restitution order, forfeiture order, money judgment order, which entails the change of Plea and Indictment to state the 'TRUTH' in the matters presented to the honorable court." CR-20-52, Dkt. 131-1, at 1. Welch goes on to state "that substantial grounds warrant reconsideration, and I am asking The Court to dismiss, correct, set aside, or amend the final judgment and indictment to state 'THE TRUTH.'" *Id*. Finally, Welch notes that, "this Motion can be joined with the 2255 Motion, which was mailed on 9/15/2023, as the facts are being presented with the ineffective counsel that was received and the misconduct and fraudulent accusations." *Id*. at 1–2.

The Government responded in opposition, arguing the Court should deny this motion for various reasons.[4] Under the circumstances, the Court agrees.

As an initial matter, Welch cannot litigate in two forums. She has filed a Petition under 28 U.S.C. § 2255 alleging—among other things—ineffective assistance of counsel

---

[4] The Government also sought an extension of its deadline to respond. CR-20-52, Dkt. 133. Good cause appearing, the same is GRANTED and the Court accepts the Government's brief as filed.

MEMORANDUM DECISION AND ORDER - 4

because her attorneys advised her to plead guilty and did not more strenuously object to the restitution amount, loss amount, and forfeiture amount. The Court will deal with those issues in Welch's civil case. But to the extent Welch's Motion to Dismiss or Amend Judgment ("Motion to Dismiss") in her criminal case seeks relief that can only be found via the proceedings in the civil case, it is denied.

Interestingly, however, in her 2255 Petition in her civil case, Welch also challenges the Court's restitution and forfeiture orders. Neither of those arguments can be adjudicated in that forum. *See United States v. Thiele*, 314 F.3d 399, 400 (9th Cir. 2002) (explaining that claims for "relief from a restitution order[] cannot be brought in a § 2255 motion . . . ."); *United States v. Finze*, 428 F. App'x 672, 677 (9th Cir. 2011) (holding that a challenge to a "forfeiture claim is not a cognizable § 2255 claim . . . .") (cleaned up)). Thus, the Court must address the forfeiture and restitution aspects of Welch's Motion to Dismiss in the context of her criminal case.

Unfortunately for Welch, the analysis on these matters is rather short because she never filed an appeal in her criminal case, and she waived her ability to collaterally attack her plea and sentence—including restitution and forfeiture.

   2. *Failure to Appeal*

The present motion is, in essence, a motion to dismiss or amend the plea agreement and indictment *as it relates to restitution and forfeiture*. But both of those issues would have needed to have been, but were not, raised on appeal to allow for any review.

During the plea hearing in this case, Welch indicated she understood what was happening, stated she was pleading guilty of her own violation, and acknowledged the

MEMORANDUM DECISION AND ORDER - 5

Court may require that she forfeit certain property or pay restitution to any victims. *See generally* CR-20-52, Dkt. 111. The Court accepted Welch's change of plea. CR-20-52, Dkt. 48.

In preparation for sentencing, the Court held two separate evidentiary hearings to establish the restitution and loss amounts. The first was on August 3, 2022. CR-20-52, Dkt. 72. The second took place as part of Welch's sentencing on September 16, 2022. CR-20-52, Dkt. 87. Welch was present and had an opportunity to present testimony, argument, and evidence at both evidentiary hearings. The Court then sentenced Welch to a term of incarceration, ordered restitution, and entered a final order of forfeiture. CR-20-52, Dkts. 88, 90.

Welch never appealed anything—including her plea, sentence, the restitution amount, or forfeiture order—in this case. Of course, as explained in the following section, Welch waived her right to appeal or otherwise collaterally attack her sentence. Nevertheless, Welch's appeal waiver does not alter the Court's finding that she is foreclosed from seeking any relief at this stage because she failed to appeal—a condition precedent to obtaining review of the Court's orders.

Generally, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Id*. In short, to preserve a claim for collateral review, a direct appeal must be taken. *See Murray v. Carrier*, 477

U.S. 478, 490-92 (1986).

Here, no cause or prejudice exists to overcome Welch's failure to appeal. She was represented by counsel at all stages of this case and had a chance to challenge the restitution and loss amounts (which she did) at her evidentiary hearing and sentencing. But Welch cannot challenge those orders now because she did not appeal such matters following imposition of sentence. And she has not presented any justification for this failure. For this reason, the Court must deny the Motion.

3. *Waiver*

Part of the reason Welch never appealed was because she waived that right. And that waiver applies at this stage of the case as well.

As part of her plea agreement, Welch agreed she would have to pay restitution and that the Court would likely order she forfeit certain assets. CR-20-52, Dkt. 45, at 6–7. Critically, Welch also specifically acknowledged that, by signing the plea agreement, she was "waiv[ing] any right to appeal or collaterally attack the entry of plea, the conviction, the entry of judgment, and the sentence *including forfeiture and restitution*." *Id*. at 12. The Court reviewed the waiver with Welch at her change of plea hearing and Welch confirmed she understood the parameters of her decision. CR-20-52, Dkt. 111, at 16–17. The Court also reviewed the waiver provision from the plea agreement at Welch's sentencing and told Welch she could appeal if she thought the waiver itself was unenforceable. CR-20-52, Dkt. 91, at 108–109. Again, Welch did not appeal any aspect of her sentence, even to argue her appeal waiver was unenforceable.

Moreover, plea waivers like the one Welch signed are enforceable. The Ninth

MEMORANDUM DECISION AND ORDER - 7

Circuit recently explained it is "well settled that a defendant may waive his constitutional rights, including the right to appeal, as a part of plea negotiations." *United States v. King*, 2021 WL 127828, at *5 (9th Cir. Jan. 14, 2021). This type of wavier provision is valid and binding so long as it was "knowingly and voluntarily made." *Id*. As already reviewed, the Court went over this provision of the plea agreement with Welch at her change of plea hearing—as well as at sentencing—and she did not voice any concerns. In fact, she acknowledged her understanding of the waiver.[5]

Welch's binding appeal waiver acts not only to bar a formal appeal to the Ninth Circuit, but also bars her attempt to collaterally attack the Court's restitution and forfeiture orders as she attempts to do here. For this reason, the Court must deny Welch's Motion to Dismiss.

*4. Conclusion*

In sum, Welch's claims regarding ineffective assistance of counsel will be dealt with in her civil case as part of the Court's eventual decision on her 2255 Petition.

Welch's requests to dismiss, amend, or alter the indictment or plea agreement as it relates to forfeiture or restitution—or to change the restitution and forfeiture orders themselves—must be denied because she did not appeal, and she knowingly and validly waived any right to collaterally attack those aspects of her sentence.

The Court does not mean to paint a confusing picture by concluding Welch's

---

[5] There are very limited circumstances under which a waiver may not apply. For example, if the sentence is illegal, the defendant may be allowed to appeal even if a waiver had been signed. Here, there is no allegation that the Court's sentence—including restitution and forfeiture—was illegal. No other exceptions were alleged (by Welch) and none appear to apply.

present Motion fails because she did not appeal while simultaneously saying she *could not* appeal.[6] But these are two separate and independent legal barriers that each have an individual analysis and purpose. Thus, while both are related to the appeals process, each addresses a unique aspect: the first – a failure to appeal; the second – a waiver of appeal. That they overlap in this case does not diminish their effectiveness. Instead of working against each other, these principles work in tandem and simply reinforce the concept that a plea agreement is largely binding.

Now, as noted, Welch could still have appealed the enforceability of her plea waiver, which, if successful, may have preserved her right to challenge restitution and forfeiture. Although such challenges are both rare and unlikely to prevail, Welch did not mount one and her failure to do so bars further review.  Again, Welch did not appeal at all.

Based upon the above considerations, Welch's Motion to Dismiss or Amend Judgment is DENIED.[7]

**B. Motion for Request of Information Regarding Properties (CR-20-52, Dkt. 146).**

Welch next asks the Court for "information relating to the assets of Norman and Trina Welch and others that the government has sold or is holding." CR-20-52, Dkt. 146, at 1. She also asks that the Government provide "all traceable funds that the government

---

[6] To be sure, the waiver is broader than just formal appeals. It covers collaterally attacks such as those here. The only exception to this waiver is a 2255 Petition for ineffective assistance of counsel. CR-20-52, Dkt. 45, at 13. As noted, Welch has filed such a petition.

[7] A few final comments about this motion. Welch cites certain statutes and caselaw for the proposition that the Court can revisit its prior orders (akin to a "motion to reconsider"). Those statues and cases are applicable in civil cases, not criminal cases. Welch also includes "claims" and "counterclaims" against Sims. Such is not appropriate. Welch cannot sue Sims within her criminal case.

MEMORANDUM DECISION AND ORDER - 9

states is traced to assets to the commission that Trina Welch is accused of, as Trina Welch has never seen this and would like to see what the government states is legitimate income and what they state is fraudulent and is very relevant in the Court and cases for discovery." *Id*.

The Government did not respond to this filing.

The Court is not able to provide Welch with any information regarding the sale or retention of specific assets and/or property. The Court can only adjudicate what is before it, and the Court is in no way involved in the actual sale or retention of assets. To obtain the information she seeks, Welch is welcome to contact the U.S. Attorney's Office and/or the United States Marshals Service, which handle the actual retention, and disposition, of assets.

Second, the Court will not order that the Government turn over anything more than it already has. As part of discovery in this case, numerous documents exchanged hands. There were multiple hearings on the financial aspects of Welch's crime, which was confusing since Welch co-mingled legitimately obtained funds with her ill-gotten gains. The Government met its burden at all relevant stages of this case as to the applicable standards and it provided the discovery it was obligated to disclose. Welch's attorneys had access to that evidence and, along with Welch, were present at the hearings, during which they presented argument, evidence, and testimony.

In sum, the Court does not have the ability to grant Welch's request and it will not require the Government to disclose anything more than it already has. The Motion for Request of Information Regarding Properties is DENIED.

## C. Petition for Home Confinement (CR-20-52, Dkt. 154).

In this Motion, Welch asks that the Court grant her home confinement to a residence in Saint Regis, Montana. Welch is currently residing at a Residential Recover Center ("RRC") in Great Falls, Montana. Welch argues the whole point of an RRC is to help with a defendant's transition back into society, but the Great Falls RRC is almost four hours from her residence; thus, it is not really helping her. She asks that she be released to home confinement in Saint Regis and that she be monitored by United States Probation.

There are two problems with this request. First, the residence in Saint Regis has been forfeited (Dkt. 116) and the forfeiture order has been affirmed (Dkt. 155). The Court does not know the status of this residence—whether it was sold at auction or is otherwise occupied. But the bottom line is Welch cannot be housed at that residence.

Second, even if that residence was a viable option for release, the Court lacks the authority to grant Welch's request.

The First Step Act—18 U.S.C. § 3582(c)(1)(A)—as amended, allows a motion for modification to a defendant's sentence to be made by either the Director of the Bureau of Prisons ("BOP"), or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

Exhaustion under Section 3582(c) is mandatory. As the Ninth Circuit has made clear, "a district court may not reach the merits of a compassionate release motion if the government has properly objected in the district court to the defendant's failure to exhaust."

*United States v. Ransom*, 859 F. App'x 58, 59 (9th Cir. 2021).

There is no evidence in the record to suggest Welch exhausted her administrative remedies. Given her failure to establish this condition precedent, the Court is unable to order Welch's release to home confinement.

Moreover, even if Welch's request was somehow not subject to the exhaustion requirement, the Court does not have the jurisdiction or authority to grant her request. Under 18 U.S.C. § 3621(b), the BOP has the sole authority over the place of imprisonment of convicted individuals, including their eligibility for home release. *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (per curiam) ("While a district court judge has wide discretion in determining the length and type of sentence, the court has no jurisdiction to select the place where the sentence will be served. Authority to determine place of confinement . . . is delegated to the Bureau of Prisons.") (cleaned up).

In sum, Welch's Petition for Home Confinement is DENIED. The BOP will continue to determine the timing and scope of Welch's confinement—including whether such confinement is at the RRC or in Welch's home.

The Court turns next to two motions filed in Welch's civil case.

**D. Application to Proceed In Forma Pauperis (CV-23-415, Dkt. 2).**

In this Motion, Welch asks that she be allowed to proceed in her civil case without the prepayment of the Court's filing fee. CV-23-415, Dkt. 2. This motion is unnecessary.

Even though a post-conviction § 2255 case is civil in nature, it stems from the criminal case and, as such, filing fees are not required. *Ruck v. United States*, 2019 WL 2078765, at *4 (D. Idaho May 9, 2019) ("There is no filing fee for § 2255 Petitions . . . .").

MEMORANDUM DECISION AND ORDER - 12

Accordingly, Welch's Application to Proceed In Forma Pauperis is DISMISSED AS MOOT.

**E. Supplemental Motion (CV-23-415, Dkt. 19).**

It is difficult to understand the purpose of this filing. The title is "Supplemental Motion to Judgment/Dismissal." Dkt. 19, at 1. This seems to be related to Welch's motion in her *criminal* case (discussed above) that asked the Court to dismiss or amend its orders regarding Welch's financial obligations. But in the Supplemental Motion, Welch levies allegations against Sims and outlines actions he took which she believes warrant criminal investigation. Welch also reviews her work history with Sims, highlights donations and expenses he authorized, and suggest such financial decisions call into question the legitimacy of the Government's case against her.

The criminal case has concluded. Welch pleaded guilty, the Court sentenced her, and she did not appeal. While Welch is entitled to her opinion about this case, the evidence, the sentence imposed, Sims, or any other relevant issues, she knowingly and willingly pleaded guilty to the crimes charged. She agreed to and admitted both the factual background, and criminal nature, of her charges. She was able to present evidence and testimony at multiple hearings, including all hearings that focused on the financial aspects of this case, to present her theory of the case.

At this stage of the proceedings, there is no reason to review Welch's job history, her relationship with Sims, or payments made from the company and how those may—or may not—relate to matters that were charged in this case.

The information contained in Welch's Supplemental Motion does not appear to be

MEMORANDUM DECISION AND ORDER - 13

related to her claims of ineffective assistance of counsel, which serve as the primary basis for her 2255 Petition. Thus, the Supplemental Motion is DENIED (Dkt. 19) and the Court will not further consider the information contained within it.

Finally, the Court turns to the two motions Welch filed in both her criminal and civil cases.

### F. Motion Asking Court and Marshals for Case Breakdown (CR-20-52, Dkt. 148; CV-23-415, Dkt. 21).

As with the Motions discussed above, it is difficult to determine the purpose of this particular Motion and the relief Welch seeks. Welch appears confused about certain aspects of forfeiture, restitution, fines, and fees, and how they all work from an organizational, legal, and pragmatic standpoint. In addition, she launches (again) into a lengthy recitation of Sims' collection efforts in Idaho state court and how those actions are wrong, harassing, or otherwise harming her. The Court will not comment on such accusations. The Court has ordered restitution (and other financial obligations) in this case. That order stands. The Government had to undertake certain actions as it relates to tangible properties and assets. Those actions were all legal. And Sims is within his rights to take whatever legal action he deems necessary to effectuate collection of money owed to him. Whether or not such legal action is wrongful or successful is for the Idaho state court to decide.

Regarding Welch's broader complaints about the financial obligations ordered in this case, the Court can only provide so much explanation. It described each financial obligation, its purpose, and how it applied to Welch at multiple hearings. Presumably, Welch's counsel (and the Government's counsel) explained these aspects of a criminal case

to Welch during plea negotiations and in other instances as well. Beyond that, the Government filed a response to the present Motion answering some of Welch's questions and explaining how the financial processes work in practice. CV-23-415, Dkt. 23, at 3–9. To the extent Welch still has questions about specific assets and the proceeds of anything that was forfeited, she can reach out to the U.S. Attorney's Office and/or the United States Marshals Service.

Frankly, it seems that Welch is mostly concerned with the fact that Sims is receiving money as the victim in this case. Welch seems to be conflating forfeiture, restitution, and what she repeatedly calls a "money judgment" in favor of Sims. The Court does not mean to be curt, but it would take a very long time to explain all of the nuances of criminal forfeiture proceedings. Put simply, Welch had to forfeit certain property which she obtained with money from her criminal conduct. She agreed to forfeit that property as part of her plea agreement, and the Court ordered her to do so as a part of her sentence. Welch also must pay restitution to the victim of her crime—Sims. Again, this was outlined in the plea agreement and ordered at sentencing. The timing, manner, and procedures by which any fines, fees, forfeited property, or restitution funds are collected, liquidated, and distributed are subject to BOP regulations, federal statutes, and the discretion of the Attorney General. The Court is confident the U.S. Attorney's Office is following all applicable procedures. But it will not review each of those where, as here, there is no reason to suspect Welch's case is being handled outside of the normal parameters.

Finally, the Court cannot order any type of relief to stop or limit Sims' actions in state court. It does not have the jurisdiction to do so. The only comment the Court will

make on this topic is that if Sims receives money through any state-court proceedings and those amounts are for the same damages as the federal criminal restitution order, then the federal criminal restitution order should be credited for the amounts Sims has received. Sims' appropriate recovery is for the U.S. Attorney's Office and the United States Marshal's Office to calculate.

In short, to the extent this motion sought information about forfeiture, restitution, and/or other financial obligations, the Court thanks the Government for its helpful response and directs Welch to the same for guidance. Otherwise, the Court will not take any action on this Motion, and it is accordingly DISMISSED as MOOT.

### G. Motion to Add Attachments (CR-20-52, Dkt. 152; CV-23-415, Dkt. 25).

Finally, Welch asks that the Court accept two attachments in both her civil and criminal case.

The first set of documents (Attachment 1) were apparently already submitted in both cases but did not have signed affidavits. Here, Welch has included signed copies. The Court does not believe these submissions are relevant to any issue presently before the Court, but it nevertheless accepts these updated and verified submissions.

The second attachment (Attachment 2) is a lengthy list of interrogatories and other discovery-type requests directed at Sims. All told, there are 588 requests (totaling 111 pages) that Welch would like Sims to answer. Welch claims it is necessary for him to answer her questions because they pertain to her 2255 Petition in the civil case and her Motion to Vacate, Dismiss, or Amend Judgment in the criminal case.

As already noted, Welch cannot "sue" Sims in her criminal case. She has no right to seek discovery from him in that regard. She may seek discovery[8] in another forum—such as her federal suit against Sims or in the Idaho state court proceedings. But she cannot do so in her criminal case.

The result is the same in Welch's civil case. There are specific rules governing discovery in 2255 cases. The Court has not ordered any discovery in the 2255 case and, even if it did, such discovery would involve the claim at issue—ineffective assistance of counsel—and not Welch's continued disagreement with Sims.

For these reasons, this Motion to Add Attachments is GRANTED IN PART and DENIED IN PART. The court will allow Attachment 1 (the updated documents), but it will not entertain Attachment 2 (discovery directed at Sims).

## IV. CONCLUSION

Most of the present filings relate to Welch's continued disagreement with the Government's case against her. In particular, her filings focus on allegations that Sims was complicit in her criminal activity or engaged in criminal activity himself. But these filings and allegations are not relevant to any matter currently before the Court.

On some of the more substantive matters, the Court reaffirms that the financial issues in this case were extremely confusing. As noted previously, Welch comingled her legitimate salary and income with her illegally obtained funds. CR-20-52, Dkt. 113, at 17;

---

[8] The Court is not implying Welch's requests are all appropriate. In fact, many are problematic for several reasons. But the Court's point is Welch cannot undertake discovery against Sims (the victim) in her criminal case. Whether, and to what degree, she can do so in other proceedings is not for the Court to decide.

Dkt. 125, at 8. This created a difficult task for investigators, counsel, and the Court. But those matters are all complete at this point. The Court has ordered what it has ordered. And to the extent that was (or remains) confusing to Welch, there is not really anything that can be done. The Court does not have the time, or obligation, to respond to every inquiry from a defendant who has a question about the legal process. The Government went out of its way to answer some of Welch's questions—for which the Court is grateful. Yet, at the end of the day, Welch's disagreement with, or lack of understanding surrounding, the financial obligations imposed by the Court is not a reason to alter, amend, or dismiss such obligations. Each was legally and lawfully imposed and will continue moving forward.

Welch's ancillary motions have been addressed above and will be adjudicated as outlined. The Court will rule on Welch's 2255 Petition regarding ineffective assistance of counsel in due course.

## V. ORDER

It is HEREBY ORDERED that:

1. The Clerk of the Court shall file this decision in both Welch's civil and criminal case. The disposition of the various motions is outlined below:

Criminal Case (CR-20-52):

2. Welch's Motion to Dismiss or Amend (Dkt. 131) is DENIED.

3. The Government's Motion for Extension (Dkt. 133) is GRANTED.

4. Welch's Motion Requesting Information Regarding Properties (Dkt. 146) is DENIED.

5. Welch's Petition for Home Confinement (Dkt. 154) is DENIED.

MEMORANDUM DECISION AND ORDER - 18

Civil Case (CV-23-415):

6. Welch's Motion to Proceed in Forma Pauperis (Dkt. 2) is DISMISSED AS MOOT.

7. Welch's Motion to Supplement (Dkt. 19) is DENIED.

Civil and Criminal Cases:

8. Welch's Motion Asking Court and Marshals for Case Breakdown (CR-20-52, Dkt. 148; CV-23-415, Dkt. 21) is DISMISSED AS MOOT.

9. Welch's Motion to Add Attachments (CR-20-52, Dkt. 152; CV-23-415, Dkt. 25) is GRANTED IN PART and DENIED IN PART as outlined herein.

DATED: December 20, 2024

David C. Nye
Chief U.S. District Court Judge