UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TRINA MARIE WELCH,<br><br>　　　　Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Respondent. | Case No. 2:23-cv-00415-DCN<br>　　　　　2:20-cr-00052-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are Petitioner Trina Welch's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (the "Petition") (Dkt. 1; CR-52, Dkt. 118)[1] and recently filed Motion for Discovery and Counsel ("Motion"). Dkt. 28. The Government opposes Welch's Petition (Dkt. 12) and Motion (Dkt. 29).

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, the Court will decide the Petition and Motion on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, Welch's Petition and Motion are DENIED.

---

[1] In this Order, "CR-52" is used when citing to the criminal record in Case No. 2:20-cr-00052-DCN; all other docket citations are to the instant civil case.

MEMORANDUM DECISION AND ORDER - 1

## II. BACKGROUND

### A. Factual Background

The factual background of the underlying criminal case is known to all parties, has been outlined in prior decisions, and is incorporated here by reference. Briefly though, after a Grand Jury indicted her on fifteen counts of wire fraud, Welch ultimately plead guilty to one of those counts for embezzling money from her employer—Keith Sims / Kasco of Idaho. CR-52, Dkts. 45, 48.

The Court sentenced Welch to 51 months of incarceration and, after holding various hearings, ordered her to pay $3,678,642.62 in restitution. CR-52, Dkt. 93. Welch is currently housed at a residential recovery center outside of Seattle, Washington, and is scheduled to be formally discharged to supervised release in a few weeks.

### B. Procedural Background

On September 20, 2023, Welch timely filed her Petition. Dkt. 1. Therein, Welch alleges three claims of ineffective assistance of counsel against her former attorneys—Amy Rubin and Steve Roberts. *Id.* Welch subsequently waived attorney-client privilege (Dkt. 7) and the Government was able to obtain declarations from both of Welch's prior attorneys regarding the allegations raised in the Petition (Dkts. 12-1, 12-2).

After filing her Petition, Welch filed a flurry of motions, notices, and supplements—in this case and in her underlying criminal case. The Court adjudicated all those motions in an omnibus decision issued on December 20, 2024. Dkt. 27. Relevant to today's decision, some of Welch's prior supplements were essentially discovery requests directed at the victim, Keith Sims, and the Government. The Court noted in its decision that

discovery in § 2255 proceedings is governed by statute and is not permitted without a Court order. *Id*. at 17. The Court also explained that it would address the underlying claims for ineffective assistance of counsel in Welch's Petition "in due course." *Id*. at 18.

Shortly after the Court issued its decision, Welch filed her Motion seeking the appointment of counsel and that the Court allow her to engage in discovery. Dkt. 28. The Government opposed both of Welch's requests. Dkt. 29.

All matters are now ripe for the Court's review.

### III. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, there are four grounds under which a federal court may grant relief to a prisoner who challenges the imposition or length of his incarceration: that (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such sentence;" (3) "the sentence was in excess of the maximum authorized by law;" or (4) "the sentence is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

Relief under § 2255 is afforded "[i]f the court finds that . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). Further, "a district court must grant a hearing to determine the validity of a petition brought under that section '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Baylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (emphasis in original) (quoting § 2255). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that,

if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011).

A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062–63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). In a § 2255 motion, conclusory statements are insufficient to require a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980); *see also James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

## IV. ANALYSIS

Before addressing the merits of Welch's Petition, the Court will resolve her recently-filed Motion. Dkt. 28. It will then turn to her three claims of ineffective assistance of counsel.

### A. Motion for Discovery and Counsel (Dkt. 28)

*1. Discovery*

In a § 2255 proceeding, "[a] judge may, for good cause, authorize a party to conduct discovery . . . . [I]f necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A." 28 U.S.C. § 2255 Rule 6(a). Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley,* 520 U.S. 899, 908–09

(1997) (cleaned up).

As the Court explained in its prior decision, the "discovery" Welch wishes to engage in here is not directed or tied to the allegations in her Petition. Dkt. 27, at 16–17. Rather, she has propounded, among other things, 588 requests directed at Keith Sims—the victim of her fraudulent conduct. Dkt. 28-1. This is not appropriate. Sims is not on trial, and his conduct is not implicated in Welch's Petition. Welch also directs certain requests at the Government—but again, as it relates to her criminal case, and not to her current Petition. Dkt. 28, at 4. The "discovery" Welch seeks is unrelated to her claims for ineffective assistance of counsel—which is where discovery, if allowed, would need to focus.

In sum, Welch's requested discovery does not correlate with her Petition. For this reason, the request is denied. And, to the extent any of the purported discovery is related to her claims of ineffective assistance, such would not change the Court's analysis. While every case *could* benefit from discovery, such is not the standard. The question is whether, based upon specific allegations, discovery is necessary to fully develop the record to provide relief. *See Bracy,* 520 U.S. at 908–09. Welch has not made any specific allegations, nor identified any evidence, to suggest the sought-after discovery will illustrate she is entitled to relief on her Petition.

This portion of Welch's Motion is DENIED.

2. *Counsel*

A federal habeas petitioner has "no right to counsel on his collateral post-conviction 28 U.S.C. § 2255 petition." *United States v. Angelone,* 894 F.2d 1129, 1130 (9th Cir. 1990). *See also Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987) ("The right to appointed counsel

extends to the first appeal of right, and no further."). Instead, the decision whether to appoint counsel in post-conviction proceedings rests with the discretion of the district court. *United States v. Harrington*, 410 F.3d 598, 600 (9th Cir. 2005). A court has considerable discretion in deciding whether to appoint counsel in § 2255 proceedings and *may* furnish counsel when the "interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B).

Here, Welch claims she needs the assistance of an attorney because she is unfamiliar with the law. However, such is not unique to Welch. Most, if not all, petitioners are unfamiliar with the law. But that fact, standing alone, does not warrant the appointment of an attorney. *See Stanger v. Way*, 2022 WL 137962, at *1 (D. Idaho Jan. 13, 2022) ("While the Court appreciates [the plaintiff's] struggles to understand the legal system, such struggles are not exceptional circumstances that require a lawyer."). The court has reviewed all of Welch's filings and, in its discretion, finds the appointment of counsel is not required to further the interests of justice. Consistent with Supreme Court precedent, 28 U.S.C § 2255, and 18 U.S.C. § 3006A, the Court finds the appointment of counsel is not appropriate in this case.

Thus, this portion of Welch's Motion is DENIED.

**B.  § 2255 Petition**

As noted, Welch raises three claims of ineffective assistance of counsel against her former attorneys. She alleges Rubin and Roberts erred because they: (1) advised her to plead guilty, (2) failed to properly investigate or present exculpatory evidence, and (3) failed to object to the restitution amount, sentencing guideline calculation, loss amount, and forfeiture amount. The Court will address each alleged error in turn.

MEMORANDUM DECISION AND ORDER - 6

As the United States Supreme Court has noted, "[a] court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).[2]

In order to successfully claim ineffective assistance of counsel, Welch must satisfy the two-part *Strickland* test. Welch must show that: (1) her counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000) (citing *Strickland*, 466 U.S. at 687).

To satisfy the first prong related to deficiency of counsel, "a defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 363 (*See also*, *Strickland*, 466 U.S. at 688). Petitioners must show "gross incompetence" on the part of their attorneys. *Kimmelman v. Morrison*, 477 U.S. 365, 366–67 (1986). There is a strong presumption that legal counsel's conduct falls within the range of sound trial strategy. *Strickland*, 466 U.S. at 669.

To satisfy the second prong, the petitioner must show he was prejudiced by his counsel's errors. A petitioner must show "that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kimmelman*, 477 U.S. at 375.

---

[2] In applying that presumption, a court must make an effort "to eliminate the distorting effects of hindsight" and instead "to reconstruct the circumstances of counsel's challenged conduct" and "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

1. *Guilty Plea*

First, Welch claims her attorneys were ineffective because they advised her to plead guilty. Specifically, she claims her counsel's performance was substandard because she believed that, upon signing the plea agreement, she would not be admitting to any facts beyond pleading guilty to one count of Wire Fraud in the amount of $48,000. Dkt 3, at 6. Welch additionally claims her attorneys told her all the other wording in the plea could be challenged. *Id*.

These allegations are patently frivolous.

The plea agreement in this case provided for the dismissal of 14 counts of Wire Fraud in violation of 18 U.S.C. § 1343 if Welch pled guilty to one count of Wire Fraud. CR-52, Dkt. 45, at 2. The count to which Welch pleaded guilty was based upon a fraudulent check in the amount of $48,889.66. *Id*. at 5. It appears this is where Welch gets her "$48,000" figure. Regardless, the parties stipulated that the loss amount was "at least more than $1,500,000" and that the Government would seek a forfeiture judgment of "at least $3,674,338.86." *Id*. at 9, 12. Welch signed the plea agreement. *Id*. at 17.

By signing the agreement, Welch affirmed not only that she was satisfied with her counsel's advice, but that she had read and understood every part of the agreement. It is, therefore, untenable to believe Welch thought she was not admitting to any facts other than the $48,000 count to which she pleaded guilty.[3] The agreement clearly set forth a higher loss and forfeiture amount and Welch verified she agreed such amounts were accurate.

---

[3] In some sense, for purposes of establishing guilt, Welch did not admit to any other facts besides those associated with the single check. Nevertheless, that admission does not mean Welch cannot be held

The evidence of the written plea agreement is corroborated by Welch's comments at the change of plea hearing. CR-52, Dkt. 111.

At that hearing, Welch was placed under oath and told that she if answered any of the Court's questions untruthfully she could be prosecuted for perjury. *Id*. at 3. Welch was advised that if she did not understand a question, she should ask the Court to rephrase it. *Id*. Welch advised the Court she had a high school diploma, had some college education, understood and could read the English language without difficulty, and had not taken anything that would interfere with her ability to move forward. *Id*. at 4. She further indicated she had adequate time to discuss her case with her lawyers, and that she was "very satisfied" with her attorneys. *Id*. at 5.[4]

The Court found Welch competent. *Id*. at 4. The Government read the factual basis contained in the signed plea agreement. CR-52, Dkt. 111, at 12–15. Welch stated she agreed with the summary. *Id*. at 15.[5] The Court verified Welch had, in fact, read the plea agreement and understood each provision. *Id*. at 16. Welch also affirmed under oath that nobody had made any promises which induced her to plead guilty other than those contained in the plea agreement. *Id*. at 17.

These statements, made under oath to the Court, directly contradict Welch's

---

responsible for other conduct or that she does not have to pay other monetary amounts. Such an arrangement is common in plea negotiations and agreements.

[4] Welch's attorneys also noted that they met with her "several times" before the change of plea hearing to ensure she understood what was happening and to what crime she was pleading guilty. Dkt. 12-1, at 3; Dkt. 12-2, at 3.

[5] The Government's summary did not go over the loss amount, but it reaffirmed that Welch understood the Government's position was that she fraudulently obtained "at least $3,674,338.86." CR-52, Dkt. 111, at 15.

MEMORANDUM DECISION AND ORDER - 9

assertions in her Petition that she was somehow duped into pleading guilty, that she did not understand the plea agreement, or that she otherwise believed she was not responsible for any monetary amount over $48,000.

In sum, the plea agreement itself, as well as Welch's oral statements, directly contradict what she is alleging now.

To be sure, Welch believed (and still believes) the amount of money she took, and the amount of restitution she owed, was far less than what the Government asserted. But her attorneys negotiated a way for her to dispute that, and, in fact, her counsel was successful in reducing the amount of restitution owed. This is not ineffective assistance of counsel but rather effective assistance. Welch has not demonstrated either that her counsel was deficient, or that any deficiencies infected the adversarial process as to raise doubts about the reliability of the proceeding's outcome. *Howard v. Clark*, 608 F.3d 563, 568 (9th Cir. 2010) (citing *Strickland*, 466 U.S. at 687).

Welch has also not met the second prong of *Strickland* and shown actual prejudice. Having failed to meet both prongs, Welch's first claim must be DISMISSED.

   2. *Investigation*

In her second claim, Welch broadly asserts her attorneys failed to investigate her case properly. She alleges they should have deposed "key witness[es]" and investigated "relevant facts." Dkt. 1, at 4, Dkt. 1-1, at 5–9. Welch also claims she participated in a proffer session with the Government but that the Government disregarded everything she said supporting her version of the facts (implicating Sims) and only focused on the things that helped further its case against her. The common thread—that has permeated all of

MEMORANDUM DECISION AND ORDER - 10

Welch's pleadings from the beginning of this case—is that she is innocent, nobody believes her, and nobody investigated her allegations.

But that simply is not true.

Among other things, Welch's attorneys interviewed multiple witnesses (Dkt. 12-1, at 4; Dkt. 12-1, at 4) and hired three different forensic accountants from two different accounting firms—all certified fraud examiners—to investigate the information presented by Welch and the Government. None were able to find any exculpatory evidence to help Welch's case. Dkt. 12-1, at 4, 6; Dkt. 12-2, at 4–5.[6]

What's more, the investigation into the fraud allegations in this case was extensive—and not just from the Government's perspective. As noted, Welch's attorneys hired multiple professionals to look at the records that formed the basis of the charged conduct. The Court was also involved in multiple hearings to determine the restitution, loss, and forfeiture amounts that should apply. Thus, for Welch to say her attorneys did not fully and fairly examine the facts of this case is short sighted. She had not just one, but two, excellent attorneys who represented her well.

As Welch herself acknowledges in her briefing, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Dkt. 1-1, at 2 (citing *Strickland*, 466 U.S. at 690). Welch has not presented any evidence to support the notion that either of her attorneys failed to investigate

---

[6] One of Welch's attorneys specifically noted the low amount Welch thought she should be held responsible for in this case can only be attributed to "her own thoughts," because it was so vastly different from all of the experts and forensic accountings—even those prepared by her own defense team. Dkt. 12-2, at 4.

MEMORANDUM DECISION AND ORDER - 11

her case to the best of their ability. Bald conclusions to the contrary are insufficient to carry the day. *See Cox v. Ayers*, 613 F.3d 883, 893 (9th Cir. 2010) ("disagreement with counsel's tactical decisions does not prove that the representation was constitutionally deficient").

And finally, even assuming arguendo that some aspect of Welch's attorneys' performance was substandard, she has not shown it caused any prejudice.

This claim fails the *Strickland* test and must be DISMISSED.

3. *Loss amount etc.*

Third and finally, Welch asserts her counsel was ineffective because they failed to object to the restitution amount, the sentencing guideline calculations, loss amount, and forfeiture.[7]

Although alluded to above, the Court wishes to make abundantly clear that this case was extremely complicated from a factual standpoint. Frankly, most white-collar cases involving fraud are complicated because money is fungible, accountings can be manipulated, and where (as here) large amounts of money were involved, it was simply difficult to keep track of everything. That said, *multiple* professional, forensic, and certified accountants looked at the information in this case and unraveled it as best they could. The Court is confident that the numbers used to calculate loss, forfeiture, and restitution represent the most accurate picture of Welch's criminal conduct.

Still, Welch's attorneys did not fail to challenge such amounts. Instead, they

---

[7] Welch's plea agreement contained a provision where she agreed *not* to challenge forfeiture and restitution. CR-52, Dkt. 45, at 12. Challenging those here—via a § 2255 ineffective assistance of counsel claim—may not violate the letter of the plea agreement, but it violates the spirit of it all the same.

objected to the loss amount, cross-examined the Government's witnesses, admitted their own exhibits and testimony, and argued for a much lower amount. CR-52, Dkt. 75, at 57–65; Dkt. 91, at 4–17. Welch's counsel likewise objected to the restitution amount. CR-52, Dkt. 91, at 65-68. And, in fact, the Court ordered restitution in an amount more than $300,000 *less than* what the Government originally requested.

Welch's references to forfeiture in this claim are unclear. Per her plea agreement, certain property and money were forfeited. Her counsel objected to these provisions where appropriate. Welch's family also filed claims on certain real property, which the Court dealt with in the underlying criminal case. But there is no indication her attorneys' performance as to forfeiture was below par.

Finally, Welch references the sentencing guidelines—specifically those that apply to the amount of money involved in her scheme—and how those were applied at her sentencing. As noted, Welch's attorneys fought hard to lower the amounts used by the Government (and ultimately by the Court) in various calculations. Her counsel also argued more generally against the proposed guidelines at sentencing and did their best to persuade the Court that a lower sentence was appropriate. CR-52, Dkt. 91, at 15, 60.

In sum, there is nothing in the record to indicate Welch's attorneys failed to object to the list of items she has identified. To the contrary, Welch's counsel fought for her each step of the way. Both attorneys did their best with the evidence available to them, made appropriate objections and arguments, and achieved the best result for Welch they could. That all their arguments were not "winners" does not downplay their performance.

Having failed to meet the *Strickland* standard, this claim is DISMISSED.

## V. CERTIFICATE OF APPEALABILITY

A defendant cannot appeal a final order on a § 2255 motion unless the district court or court of appeals issue a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1) (providing that appeal cannot proceed unless "circuit justice or judge issues a certificate of appealability"); *U.S. v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997) (interpreting "circuit justice or judge" to include district judges). The court should issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires the defendant to show that "a reasonable jurist would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

To promote efficiency, the district court is required to issue or deny a COA in the same order denying the defendant's § 2255 motion. *See* Rule 11(a) of the Rules Governing § 2255 Proceedings. If the district court denies the COA, the court should state the reason for its decision. *Asrar*, 116 F.3d at 1270. The defendant cannot appeal the denial of the COA but can file a notice of appeal and request a COA from the court of appeals pursuant to Federal Rule of Appellate Procedure 22. *See* Rule 11(a) of the Rules Governing § 2255 Proceedings. Upon so doing, the district court forwards to the court of appeals the defendant's case file, final order, and notice of appeal. *See Asrar*, 116 F.3d at 1270.

In this case, the Court denies the COA. As explained in the preceding sections, Welch's claims do not warrant any reduction or vacatur of her sentence. No reasonable jurist would disagree with this assessment. Therefore, should Welch wish to appeal, she must timely file a notice of appeal with this Court and request a COA from the Ninth

Circuit.

## VI. CONCLUSION

To this day, Welch believes the evidence in this case does not support her conviction. However, that ship has long sailed. Welch admitted guilt more than two years ago and received a reduction in her sentence for her acceptance or responsibility. As for her two attorneys, the Court finds nothing in the record to indicate any deficient performance or prejudice. The bulk of Welch's Petition consists of self-serving statements that are either directly contradicted by the record—including her own admissions in the plea agreement—or simply her opinion. But without any facts in support, none of those allegations can sustain a finding of ineffective assistance of counsel.

For all the reasons stated above, the Court finds no reason to vacate or remand Welch's conviction or sentence. Furthermore, the Court finds it unnecessary to conduct an evidentiary hearing on the same. Thus, the Petition is DENIED.

## VII. ORDER

**IT IS HEREBY ORDERED:**

1. Welch's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 Dkt. 1; CR-52, Dkt. 118 is **DENIED**. The Clerk of the Court is directed to file this Order in both the criminal and civil case.

2. Welch's Motion for Discovery and to Appoint Counsel (Dkt. 28) is **DENIED**.

3. The Court finds there is no need for an evidentiary hearing.

4. No certificate of appealability shall issue. Welch is advised that she still may

request a certificate of appealability from the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b) and Ninth Circuit Rule 22-1. To do so, she must file a timely notice of appeal.

5. If Welch files a timely notice of appeal, and not until such time, the Clerk of the Court shall forward a copy of the notice of appeal, together with this Order, to the Ninth Circuit Court of Appeals.

DATED: May 22, 2025

_____
David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 16